Carroll,
No. 6035.

STATE *v.* WILLIAM L. MANOLY.

October 30, 1970.

*Warren B. Rudman,* Attorney General and *W. Michael Dunn,* Assistant Attorney General ( *Mr. Dunn* orally ), for the State.

*Nixon, Christy & Tessier* ( *Mr. Thomas J. Tessier* orally ), for the defendant.

GRIMES, J. The defendant is appealing from the trial court's denial of his motion to withdraw his pleas of guilty and to re-enter his original pleas of not guilty by reason of insanity after the court imposed a prison sentence instead of following the recommendations of the County Attorney which were made in accordance with a plea agreement arrived at after extensive negotiations with defendant's counsel.

It appears that, following an episode on September 17, 1966, defendant was charged with simple assault on each of two girls

and was bound over on a charge of assault with intent to kill one Baldwin. He voluntarily admitted himself to the New Hampshire Hospital where he stayed for about a month and where it was at first thought that he might have organic brain damage. However the final diagnosis was " acute undifferentiated schizophrenic reaction. "

He was indicted in May of 1967 for assault with intent to kill Baldwin and for assault with intent to rape the two girls. He entered pleas of not guilty by reason of insanity to all charges and has been at large on $ 5,000 bail.

On October 5, 1967, defendant withdrew his pleas of not guilty by reason of insanity and entered pleas of guilty to the indictment involving Baldwin and to the lesser included charge of simple assault on each of the indictments involving the girls. The pleas to lesser charges were accepted by the State. The record of that proceeding discloses that at no time did the trial court address the defendant concerning his pleas except to ask what they were.

Following these pleas, the County Attorney reviewed the facts which resulted in the indictments, defendant's voluntary commitment to the hospital, the diagnosis, and the fact that defendant had been living in Maryland making a good social adjustment, working steadily and attending a mental health clinic where he receives treatment. He disclosed that he and defendant's attorney had spent considerable time working out a solution which in the case involving Baldwin was embodied in a written recommendation. Its substance was that the case be continued for sentence, with probation for five years, submission to observation at the New Hampshire Hospital for thirty days for a determination whether defendant would presently constitute a danger if he were to go at large, and if so, for advice to the court prior to defendant's release from the hospital to permit further proceedings. It further provided that if he was not a danger, then for his release subject to certain specified conditions relating to treatment and reporting, including attendance at the New Hampshire Hospital for evaluation at least annually. Defendant's attorney concurred in the recommendations and confirmed the extensive negotiations.

The court then inquired whether defendant's counsel had any medical evidence that defendant would not be a danger if at large, and on being informed that it could be presented at a

later time, continued the case on his own motion to allow defendant's counsel "to produce evidence relating to whether or not this man would be a danger to society if he were to go out at large, on the recommendation of the State."

At a second hearing on November 27, 1967, the County Attorney made recommendations with respect to the simple assault charges which were concurred in by defendant's counsel, and after some colloquy involving counsel and the court, the testimony of a psychologist and a psychiatrist, both from the New Hampshire Hospital, was offered along with reports from the Maryland Department of Health.

In response to the court's inquiry if he wished to say anything, the defendant made a brief statement following which the court immediately sentenced the defendant to not more than five years and no less than one year and one day in State Prison. Defendant's counsel at once moved to withdraw the plea and reenter the plea of not guilty by reason of insanity. The County Attorney stated that he had no objection in view of the prior discussions in reaching the State's recommendation. The motion was, however, denied. Defendant's counsel then moved to withdraw the plea on the basis it was involuntary. Defendant's exceptions to the denial of these motions were transferred by *Morris, J.*

The record before us shows that the original plea of not guilty by reason of insanity was not frivolous. The plea of guilty was entered as a result of lengthy negotiations with the County Attorney and this was made clear to the trial court from the very beginning.

Plea negotiations have existed in this State as well as elsewhere since time immemorial, but it is only recently that they have been openly acknowledged as a proper part of the criminal process. *See* ABA Standards Relating to Pleas of Guilty *ss.* 3.1-3.4 ( Approved Draft 1968 ); Standards Relating to Sentencing Alternatives and Procedures *s.* 5.5 ( b )( v ) ( Approved Draft 1968 ). The Supreme Court of the United States has recently affirmed the constitutional validity of guilty pleas entered because of offers of leniency by a defendant who has counsel by distinguishing such pleas from confessions given by defendants in the absence of counsel. *Brady* v. *United States,* 397 U.S. 742, 25 L. Ed. 2d 747, 90 S. Ct. 1463 ( 1970 ).

Guilty pleas are not invalid merely because they are entered as

a result of plea negotiations and in response to the prosecutor's agreement to make certain recommendations regarding sentence. However great care must be taken to prevent the manifest injustice which may result if a defendant does not understand that the trial court is not bound to follow the recommendation agreed upon. Trial judges in this State do not participate in plea negotiations, and are not bound to follow the prosecutor's recommendation. However not all defendants know this.

A guilty plea cannot be considered intelligent and voluntary if it is entered by a defendant who personally does not fully understand the consequences of the plea, including the risk that the court may not follow the recommendation which induced his plea. It is important therefore that the trial judge either ( 1 ) make it plain to the defendant personally on the record, before accepting a guilty plea, that while he will give consideration to the recommendation of the prosecutor he is not bound by it, and that the defendant will have to take his chances as to what sentence will be imposed or ( 2 ) failing this if the court is not going to follow the recommendation he should so inform the defendant before sentence and give him the opportunity to withdraw his plea.

The record here is barren as to defendant's understanding of the significance of his plea in the light of the plea negotiations and there is nothing to show that before sentence was actually pronounced the defendant knew that the trial judge had determined not to follow the recommendation agreed upon. Under all the circumstances we conclude that justice requires that the defendant be permitted to withdraw his plea of guilty and to plead anew.

*Exceptions sustained; remanded.*

All concurred.