Merrimack
No. 6881

JIMMY ST. PIERRE

v.

JOSEPH VITEK, WARDEN OF STATE PRISON

November 29, 1974

*McSwiney & Jones (Mr. Carroll F. Jones* orally) for the plaintiff.

*Warren B. Rudman,* attorney general, and *David W. Hess,* assistant attorney general *(Mr. Hess* orally), for the defendant.

LAMPRON, J. Petition for a writ of habeas corpus filed in the superior court on October 15, 1973. Plaintiff alleges that his plea of guilty of murder in the second degree which he entered on January 17, 1968, was not intelligent and voluntary. After a hearing, the Trial Court *(Loughlin,* J.) dismissed the petition and reserved and transferred plaintiff's exception thereto.

In April 1967, plaintiff, about twenty-one years old, was indicted for the first-degree murder in Newmarket of Amy Brousseau whom plaintiff shot on February 1, 1967, and who died on March 26, 1967, from the mortal wounds which she had received. He was arraigned before *Morris,* J., on May 1, 1967, and pleaded not guilty. On January 17, 1968, there was an on-the-record conference with the court by counsel for the State and former counsel for the plaintiff pertaining to the plaintiff's willingness to plead to a charge of murder of the second degree. Plaintiff's counsel informed the court that he was advising plaintiff to so plead. He further stated that he had already talked to the plaintiff about changing his previous plea and that he was to confer with him again.

On that afternoon the plaintiff appeared before the court and retracted his previous plea of not guilty to murder of

768

the first degree and pleaded guilty to murder in the second degree. The court, on the record, made inquiries of the plaintiff pertaining to his plea. In answer the plaintiff stated that he understood the nature of his plea, having discussed it with his counsel on a prior occasion and again on this day. He also stated that he realized he could receive a sentence of life imprisonment or for a term of years in State prison as a result of his plea. He further answered to the court's questioning that his plea was not made as a result of any offer or inducement on the part of the State and that he was entering the plea of his own free will. His counsel stated that in the presence of his secretary he had discussed the plea with his client that very afternoon.

Sentencing of the plaintiff was deferred to January 29, 1968. At that time the probation report was examined by the court and counsel and the following evidence was introduced. A girlfriend of the victim testified that she and Amy were walking home after school and were followed and later joined by the plaintiff. A discussion ensued between him and the victim as to the reason she refused to go out with him. At one point Jimmy told Amy he was going to kill her and then kill himself. The three finally went to the home of Amy's sister-in-law. The witness managed to leave and apprised Amy's mother of the situation, who in turn called the police. The friend later learned that Amy had been shot. The police officer who responded to the call testified that he saw Amy and Jimmy walking toward a lightly wooded area. He called him by name and asked him to stop. Jimmy then released Amy and shot her twice and continued to fire at her while she was lying on the ground.

A psychiatrist who examined Jimmy also testified. He had obtained plaintiff's life history and his version of the happening. His diagnosis was that Jimmy had an abnormal, stunted personality and was abnormally suspicious and sensitive. He had an eighth-grade education. There was conflict in the evidence as to whether plaintiff could read and write, although the doctor stated he could not. The doctor testified Jimmy was a psychopath and immature, although twenty-one years of age. The superintendent of the county jail, where the plaintiff had been confined, testified that plaintiff has

had some periods of depression but "he's been a good worker, gets along fine with the inmates". Counsel for the State then recommended life imprisonment. Defense counsel pleaded that the shooting happened under emotional circumstances and asked that his client be given rehabilitation opportunities. The court asked the plaintiff if he wanted to make a statement. He declined the offer.

On October 23, 1973, at the hearing on the petition for a writ of habeas corpus, the plaintiff testified that he had been indicted for first-degree murder which carried a penalty of capital punishment by hanging, while murder in the second degree would have a sentence of life imprisonment. He also testified that his attorney did not want to represent him on his not guilty plea and told him "the best way to do is to enter a plea of guilty" and the judge would probably give him "life or years". He testified that he was not advised he had a right to remain silent, to a jury trial, and to call witnesses on his own behalf.

It has long been the rule that guilty pleas to be valid must be intelligent and voluntary. *State v. Manoly,* 110 N.H. 434, 437, 270 A.2d 611, 613 (1970); *see Kercheval v. United States,* 274 U.S. 220 (1927). However, it was not until *Boykin v. Alabama,* 395 U.S. 238 (1969), that the State has the burden of proving by the record that a defendant who has pleaded guilty has intelligently and voluntarily waived certain pertinent constitutional rights. Since these requirements apply only to guilty pleas entered after June 2, 1969, they do not govern plaintiff's plea made January 17, 1968. *Andrews v. Commonwealth,* 282 N.E.2d 376 (Mass. 1972); *Commonwealth v. Godfrey,* 434 Pa. 532, 254 A.2d 923 (1969); *see Halliday v. United States,* 394 U.S. 831 (1969).

According to the pre-*Boykin* law, which we apply here, "whenever a defendant pleads guilty he is presumed to be aware of what he is doing." *Commonwealth v. Holl,* 434 Pa. 312, 313, 254 A.2d 11, 12 (1969). Hence, he bears the burden of proving by a preponderance of the evidence that his plea was made involuntarily or unknowingly. *Huot v. Commonwealth,* 292 N.E.2d 700, 706 (Mass. 1973). The trial court in arriving at its conclusions on plaintiff's petition for a writ of habeas corpus could properly consider the totality

of the circumstances revealed by the record of the proceedings at the time plaintiff's plea was entered as well as the plaintiff's testimony on his petition for habeas corpus. *Id.* at 705.

The trial court could disbelieve any part of plaintiff's testimony before him even if no testimony was introduced to rebut it. Although the psychiatrist testified before the sentencing to certain deficiencies in plaintiff's physical and mental make-up, these did not compel a finding that his plea was involuntary and unintelligent. *Commonwealth v. Miller,* 309 A.2d 705, 708 (Pa. 1973); *Lesley v. Oklahoma,* 407 F.2d 543 (10th Cir. 1969). Nor does the possibility that plaintiff may have traded a possible death sentence for a sentence to life imprisonment necessarily invalidate his plea. *Brady v. United States,* 397 U.S. 742, 752 (1970). The trial court could find on the evidence before it that plaintiff received the effective aid of counsel as to his plea and appeared to understand the matters discussed. *Commonwealth v. Kozerski,* 294 N.E.2d 460 (Mass. 1973). The court could further find from the record of the hearing when he entered his guilty plea, that the court's inquiries and plaintiff's answers revealed that the plea was knowingly and voluntarily entered. The dismissal of plaintiff's petition implies findings that the plea was knowingly entered and was not the result of coercion or of any other influence or constraint which rendered it involuntary.

*Exception overruled.*

All concurred.