Rockingham
No. 6972

CARROLL F. JOHNSON HEATH

v.

JOSEPH C. VITEK, WARDEN,
NEW HAMPSHIRE STATE PRISON

April 30, 1975

*Robert Singer,* and New Hampshire Civil Liberties Union, Inc., amicus curiae, by *Richard S. Kohn (Mr. Kohn* orally), for the plaintiff.

*Warren B. Rudman,* attorney general, and *Thomas D. Rath,* assistant attorney general *(Mr. Rath* orally), for the defendant.

DUNCAN, J. This petition for habeas corpus in many of its material aspects parallels the case of *St. Pierre v. Vitek,* 114 N.H. 766, 330 A.2d 117 (1974). A distinguishing feature is that the determinative events in the case now before us took place in 1950, over twenty-three years before this petition was filed in the superior court on June 22, 1973. At the hearing before *Morris,* J., on April 5, 1974, and later in this court, plaintiff was represented both by counsel assigned by the court in December 1973, and by counsel for amicus curiae. Beside seeking to turn back the pages of history by applying post-*Boykin* principles *(Boykin v. Alabama,* 395 U.S. 238 (1969)) to events of a quarter century ago, plaintiff's counsel join in asking this court to exercise its "power to right a wrong" by discharge of the plaintiff unless he is found to presently pose a danger to society owing to mental disorder. The trial court, upon an evidentiary hearing including the record of the original case, found that the plaintiff's rights had not been violated, and dismissed the petition subject to his exceptions.

The plaintiff stands convicted upon his plea of guilty to the offense of second-degree murder. The offense was committed on February 15, 1950, when a female acquaintance of his was beaten and stabbed to death in Exeter. The defendant, then aged eighteen, was apprehended on April 14, 1950. On the same day he gave a fourteen-page statement describing the circumstances of his attack upon the victim. On April 18, 1950, a plea of not guilty was entered to an indictment for first-degree murder, the plaintiff was committed to the State hospital, and Robert J. Doyle of Nashua, an attorney experienced in criminal defense, was appointed by the court to represent the plaintiff. On May 18, 1950, the then superintendent of the State hospital reported to the court that in his opinion the plaintiff was "not insane" and that he was "competent to stand trial".

On May 22, 1950, the plaintiff was discharged from the State hospital and on June 2, 1950, in the presence of his counsel, the attorney general and the county solicitor, the plaintiff withdrew his former plea and entered a plea of "guilty in the second degree". After hearing the statements of counsel, the Trial Court (*Sullivan, J.*) imposed a sentence of life imprisonment.

The plaintiff was granted a conditional pardon in 1968, but was thereafter returned to prison for violation of the condition. In August 1972, he was released on parole, which in turn was revoked for violation of its terms.

At the hearing before *Morris, J.*, on the pending petition, the plaintiff testified that his plea of guilty was made without appreciation that he would thereby waive his constitutional rights, or that it was open to him to enter a plea of not guilty by reason of insanity. Additionally, a psychiatrist called by amicus curiae testified that he had examined the State hospital records, including records of later confinements there, and that in his opinion, based upon those records and his examination of the plaintiff in 1972 and 1973, the plaintiff "probably was psychotic at the time of the crime", a term which he indicated did "not imply a lack of conscience or awareness of right or wrong." He conceded that it was not possible for him "to say with certainty, the [plaintiff's] mental condition on February 15, 1950."

The plaintiff had the burden of showing that his plea was not voluntarily and intelligently made. *St. Pierre v. Vitek supra.* His evidence did not compel a finding that he was not competent to enter his plea of "guilty in the second degree", or that the plea was not voluntarily and intelligently made. Nor did it establish that he was denied the effective assistance of counsel. His counsel at that time was an experienced practitioner, skilled in the art of criminal defense, who has since deceased. There is no evidence that he failed to weigh the possibility of a plea of insanity against the finding of the superintendent of the hospital, that his client was not insane in April and May of 1950. It appeared that counsel had visited plaintiff at the hospital while he was committed there, and that he had consulted with the plaintiff and his mother; otherwise there is no record of his activity outside the courtroom. His advice that the plaintiff should plead to a lesser offense than first-degree murder did not establish a failure to act with a skill "within the range of competence required of attorneys representing defendants in criminal cases." *State v. Fleury,* 111 N.H. 294, 299, 282

A.2d 873, 877 (1971); *State v. McCarthy*, 112 N.H. 437, 440, 298 A.2d 740, 742 (1972); *Parker v. North Carolina*, 397 U.S. 790, 797-98 (1970); *see North Carolina v. Alford*, 400 U.S. 25 (1970).

Other contentions raised which stem from the principles enunciated by *Boykin v. Alabama*, 395 U.S. 238 (1969), and *State v. Manoly*, 110 N.H. 434, 270 A.2d 611 (1970), and the ABA Standards cited therein, are sufficiently answered by *St. Pierre v. Vitek supra* and the authorities cited in that opinion.

Recognizing the risk of a new life sentence should retrial be granted and the "practical impossibility" today of establishing the plaintiff's insanity at the time of the crime, his counsel advance the novel proposal that this court fashion a new remedy (*Boody v. Watson*, 64 N.H. 162, 9 A. 794 (1886)) "by ordering his release within fifteen days unless the State can demonstrate that due to a mental disorder he poses an unacceptable danger to society at the present time."

The record in this case clearly furnishes no foundation for the exercise of the court's supervisory power for such a purpose. RSA 490:4 (Supp. 1973).

*Plaintiff's exceptions overruled; petition denied.*

All concurred.