Hillsborough
No. 78-288

THE STATE OF NEW HAMPSHIRE

v.

LAWRENCE C. BEAULIEU

May 9, 1979

*Thomas D. Rath*, attorney general (*Peter W. Mosseau*, attorney, orally), for the State.

*Tetler & Holmes*, of Hampton, *Marc J. Shepcaro* and *C. Thomas Zinni*, of Massachusetts (*Mr. Shepcaro* orally), for the defendant.

GRIMES, J.   The question in this criminal case is whether the trial court erred in denying defendant's motion to vacate his pleas of guilty to certain felony charges. We hold there was no error.

Defendant was charged by indictment with possession of marijuana and with possession of cocaine with intent to sell. RSA 318-B:2 (Supp. 1977). Certain quantities of the substance were seized along with other items following a search of his home pursuant to a warrant.

On March 1, 1978, the defendant pleaded guilty to both indictments before *DiClerico*, J. At the plea hearing, the defendant, while represented by different counsel, signed an acknowledgment of rights stating that he understood and voluntarily waived all defenses and constitutional rights. Although no plea negotiations were entered into, the county attorney, after the entry of the signed acknowledgment of rights, but prior to the entry of defendant's pleas, stated that he would recommend a commitment to the State prison for a term of not more than six nor less than three years. The court called a recess during which it was agreed that the alleged offenses constituted Class A felonies. The entire proceeding was recorded, and the acknowledgment of rights form was changed to reflect the agreement concerning the classification of the offenses. The county attorney then recited to the court the facts the State would prove were the case to be tried.

The court next addressed the defendant and reviewed the acknowledgment of rights with him. The defendant stated among other things that he was pleading guilty because he was guilty, that he understood there was no plea bargain and that the court was not bound by the recommendation of the county attorney, and that the penalty could be as high as fifteen years and a fine of $2,000. The court found that defendant's decision to plead guilty was "freely, voluntarily and intelligently made" and that he fully understood "all rights [he was] waiving by pleading guilty." *State v. Beaulieu*, 115 N.H. 483, 344 A.2d 3 (1975); *St. Pierre v. Vitek*, 114 N.H. 766, 330 A.2d 117 (1974).

Defense counsel called a doctor who had been treating defendant for drug dependence and a priest to testify on defendant's behalf. Defendant also took the stand.

The court imposed a sentence of not less than four nor more than eight years in the State prison on the cocaine charge with one year of the minimum suspended. On the marijuana charge, the court imposed a concurrent sentence of not less than one-and-a-half years nor more than three years. The court's sentence also recommended that after one year the defendant be allowed to serve the balance of the sentence in the Hillsborough County House of Correction.

Thereafter the defendant acquired new counsel and moved to vacate the pleas and for a new trial. A hearing was held before *DiClerico*, J., at which only oral arguments were presented. The court on July 11, 1978, denied the motion without prejudice to renew the same for the purpose of an evidentiary hearing. Such a motion was filed and an evidentiary hearing was held before *Contas*, J., on August 14, 1978, at which the State police detective corporal who was in charge of the investigation of defendant testified. He stated that he had offered to assist defendant by making a favorable recommendation to the county attorney if defendant cooperated by giving information about others which would give him probable cause with respect to them.

He stated that defendant did give him some information but it was not enough to be of value. Defendant's lawyer at the time of the plea was also a witness and, under a waiver of the attorney-client privilege, testified about his representation of defendant. In substance he stated that after receiving information from the State, conferring with the detective corporal and with his client, he formed the opinion that the case could be "bargained out so that probation might be given to my client." He was careful, however, not to state that such a bargain had been made but only that it was his conclusion that one could be made. He did state that the detective had told him about two months before the plea that the information he was giving the detective was not sufficient. He stated that the officer never told him he was not going to make a favorable recommendation. He further stated that when he came to court on March 1, 1978, he believed that he could work out a plea agreement and did not expect to go to trial and was not prepared to go to trial. When he learned that the recommendation would be commitment, he so informed his client, and after some discussion, which included a weighing of the strengths and weaknesses of his case, advised him that he had "a fairly good opportunity to get probation." This was based on the facts that defendant was twenty-six years old and married, that he had no prior criminal record, that Dr. Rizzo and Father Robie both would testify on his behalf, and that the probation department report did not recommend commitment to the State prison, but rather to a house of correction.

The defendant also took the stand. He testified that he had been led by the detective to believe that by cooperating with him the charge against his wife would be dropped and that he would get a favorable recommendation. He also stated that he had given the detective all the information he could get and was never told that a favorable recommendation would not be made. Defendant further testified that he changed his statement to the court regarding possession with intent to

sell because of prompting by his attorney, and that he was "not guilty of possessing *the amount* stated by the indictment with intent to sell." (Emphasis added.)

The court on August 18, 1978, found that defendant was represented by competent counsel at the time of the plea, that he was not denied any constitutional rights, and "that he freely, knowingly and voluntarily pleaded guilty." His exceptions were transferred by *Contas*, J.

Defendant's basic argument in this court is that the record shows that his pleas of guilty were "coupled with claims of innocence, denials of guilt and by statements which if true could establish that defendant was not guilty of the crimes with which he was charged." He first urges us to adopt a rule that no plea of guilty can be accepted if coupled with claims of innocence, although he admits that *North Carolina v. Alford*, 400 U.S. 25 (1970), does not require such a rule. He further argues that the pleas in these cases do not meet the requirements of *Alford* because there is no evidentiary showing of a strong factual basis for the guilty pleas. He also complains that at the time of his plea the judge did not inform him of the presumption of innocence, the permissible range of punishment and the right to avail himself of all possible defenses.

■ Disposing of the last contention first, the record shows that Justice DiClerico meticulously informed defendant of his rights and specifically informed him of the range of punishment and that he had the "right not to be convicted except by proof beyond a reasonable doubt." Although no explicit reference was made of the "presumption of innocence," we find no error in not including it as one of the rights given up before accepting a plea. Caution might lead courts to do so in the future, but it is not a practice required by *Taylor v. Kentucky*, 436 U.S. 478 (1978). That case required a requested instruction to the jury on the presumption of innocence to assure a fair trial only because of the particular circumstances of that case. *Taylor* does not mandate that the presumption be included among those rights to be waived before acceptance of a guilty plea. The court expressly informed defendant that he was giving up the right to present all "defenses which you may have to these charges," and the same information was included in the acknowledgment of rights that defendant signed.

Turning now to defendant's first two arguments, both are based on the assumption that the guilty pleas were coupled with claims of innocence, denials of guilt, and statements which, if true, would establish innocence. We do not find such claims, denials, or statements anywhere in the voluminous record, and the arguments must therefore fail.

In the acknowledgment of rights, defendant states that he is pleading guilty because he is guilty and that he committed the acts charged and intended to do so. At the time of the plea, the defendant stated that he was satisfied with the representation he received and that he understood he was under no obligation to plead guilty.

Defendant relies on the following colloquy between the court and himself which followed his repeated statement that he was pleading guilty because he was guilty:

THE COURT: On October 7, 1977, did you knowingly have in your possession and under your control a controlled drug, to wit, marijuana, known as cannabis-type drug, in excess of one pound?

DEFENDANT: Yes.

THE COURT: On October 7, 1977, did you knowingly have in your possession and under your control with the intent to sell a certain narcotic-controlled narcotic drug, to wit, cocaine?

DEFENDANT: No.

THE COURT: All right. You say, "No." Why do you say, "No"? Please explain.

DEFENDANT: Well, as far as the charge goes on the amount, I say no.

THE COURT: In other words, you dispute the factual statement that you had —made by the County Attorney that you had four ounces in your possession.

DEFENDANT: Right.

THE COURT: I'm going to ask————All right. With that understanding, did you have knowingly in your possession and under your control with the intent to sell a certain controlled drug, being cocaine, whatever the amount of that drug might be————

| | |
|---|---|
| DEFENDANT: | Yes. |
| THE COURT: | Excuse me. Let me finish. ———whatever the amount of that drug might have been? |
| DEFENDANT: | *Yes.* (Emphasis added.) |
| THE COURT: | And it's your position it was less than four ounces. |
| DEFENDANT: | (Motioning head.) |

It appears clear that the defendant was disputing the amount of cocaine in his possession on October 7, 1977, and not the fact that he possessed cocaine with intent to sell it. It does not indicate a claim of innocence. The fact that defendant was concerned only with the amount in his possession and with the fact that two ounces of the cocaine found on the premises the day of the search were for his own use is demonstrated in various other parts of the record.

For example, at the sentencing hearing, after he reiterated on cross-examination his statements that he did not agree that there were four ounces of cocaine but that the material was a "cut," and that the two grams of cocaine found were for his own use, the court interjected as follows:

| | |
|---|---|
| THE COURT: | Well, let's get one thing straight here. You've just pleaded guilty to——— |
| DEFENDANT: | Well, for personal ——— that there was for personal use at the house, *that two grams.* (Emphasis added.) |
| THE COURT: | Well, this indictment says that you had in your possession, knowingly had in your possession, with intent to sell, certain controlled drug, cocaine. |
| DEFENDANT: | Right. |
| THE COURT: | You plead guilty to that. |
| DEFENDANT: | Right. |
| THE COURT: | Are you changing——— |
| DEFENDANT: | No, no, I'm not changing. I'm just saying that that———what |

|                    |                                |
|--------------------|--------------------------------|
|                    | they found at the house at that time was for my use. |
| THE COURT:         | All right.                     |

There is nothing in this record that indicates a claim of innocence or a denial of guilt but again only a dispute over the amount of pure cocaine found and a claim that the specific two grams were for personal use only. There is no denial that he possessed other cocaine with intent to sell.

In fact, the defendant on several occasions explained that he supported his "habit" by buying cocaine, and then mixing it down and selling the "cut" material. This practice enabled him to save enough of the pure for his own use without cost. Defendant also testified that he used a beam scale and scale kit, which were among the items seized, for the purpose of making such sales.

Defendant also relies on the following exchange with the court:

|                        |                                                                 |
|------------------------|-----------------------------------------------------------------|
| THE DEPUTY CLERK:      | Lawrence Beaulieu, on Indictment 615-A, charging you with the unlawful possession of cocaine with the intent to sell, how do you plead? |
| DEFENDANT:             | Guilty.                                                         |
| THE DEPUTY CLERK:      | And to Indictment 616-A, charging you with the unlawful possession of controlled drug, marijuana, in excess of one pound, how do you plead? |
| DEFENDANT:             | Not guilty. Guilty.                                             |
| THE DEPUTY CLERK:      | It's the Court's understanding you're pleading guilty to each of these indictments. |
| DEFENDANT:             | Yes.                                                           |
| THE DEPUTY CLERK:      | You may be seated for the moment. |
| THE COURT:             | Mr. Beaulieu, why did you just say, "Not guilty"? |
| DEFENDANT:             | Well, marijuana I smoke. I smoke marijuana regularly; and I didn't sell marijuana. I mean, the pound and a half that was in my house |

THE COURT: was for personal use, or, the pound and a quarter. Whatever that was there. I was using it on a regular basis.

THE COURT: Well, the indictment does not charge you with selling marijuana. You understand that.

DEFENDANT: Yes.

THE COURT: You're charged with knowingly having in your possession and under your control a controlled drug, marijuana, in excess of one pound. You understand that.

DEFENDANT: Yes.

THE COURT: And you are not charged with sale in this indictment or with intent to sell in this indictment. You understand that.

DEFENDANT: Yes.

THE COURT: Now, with that, you've just entered a guilty plea after you indicated not guilty. Do you wish this guilty plea that you have just entered to stand?

DEFENDANT: Yes, sir.

THE COURT: And I wanted to inquire as to why you initially said, "Not guilty." Now, it appears that you initially said, "Not guilty," because————

DEFENDANT: Because I thought it was for sales————

THE COURT: All right.

DEFENDANT: ————of marijuana.

THE COURT: So, with respect to the indictment with regard to marijuana, you wish the guilty plea to stand.

DEFENDANT: Yes.

We are of the opinion that this colloquy demonstrates that the defendant was fully informed of the charges against him, and that it in no way constitutes a denial of guilt.

Although the defendant questions the propriety of the trial judge's questioning, we wish to state that in our opinion the trial judge was alert to ambiguities that arose and was correct in attempting to ferret out any difficulties that may have been lurking in the background. He is to be commended for the careful attention paid to the rights of the defendant and the establishment of an excellent record for review. *See Boykin v. Alabama*, 395 U.S. 238, 243–44 (1969).

Because we find in the record no claims of innocence, denials of guilt, or statements which, if true, would establish innocence, we need not decide whether we should adopt a per se rule against accepting pleas of guilty when those conditions do exist. Nor need we decide whether under *North Carolina v. Alford*, 400 U.S. 25 (1970), there is a sufficiently strong factual basis for accepting the plea in spite of an unwillingness to admit guilt.

■ Although there had obviously been some indication from the detective that favorable recommendations would be made if defendant cooperated with him sufficiently, the defendant knew before he pleaded that no such recommendations would be forthcoming. Unlike the prisoner in *Blackledge v. Allison*, 431 U.S. 63 (1977), the defendant in the present case received an extensive evidentiary hearing on his request to withdraw his plea. Moreover, unlike the allegations in *Blackledge*, the defendant in this case was not *promised* probation by his lawyer or anyone else. The record does not indicate an innocent man seeking to plead guilty rather than chance the imposition of greater punishment. Rather, it indicates a guilty man hoping for probation. His decision to plead guilty after knowing the nature of the recommendation was based on the hope that the court could be convinced by his witnesses and other circumstances to grant him probation.

We have before us a record that fully supports the findings of two trial judges that the defendant entered his guilty pleas freely, voluntarily, and intelligently.

*Exceptions overruled.*

All concurred.