STATE *v.* HENRY C. PIASECNY.

Argued April 4, 1967.

Decided July 18, 1967.

*George S. Pappagianis*, Attorney General, *William J. O'Neil*, Deputy Attorney General and *Emile R. Bussiere*, county attorney (*Mr. O'Neil* orally), for the State.

*McLane, Carleton, Graf, Greene & Brown* (*Mr. Stanley M. Brown* orally), for the defendant.

KENISON, C.J. The defendant petitioned for discharge (RSA 135:28) or parole (RSA 135:29) from the New Hampshire Hospital. RSA 135:1. Previously in December 1963 the defendant had been charged with the murder of his wife and another person but the grand jury refused to return a true bill against him on the grounds of insanity. The defendant was committed to the New Hampshire Hospital "for life until or unless earlier discharged, released or transferred by due course of law" pursuant to the provisions of RSA 607:3 (supp); Laws 1955, 177:1. The Court denied the petition for discharge but granted the petition for parole subject to certain conditions. These conditions were (1) that defendant's "return to the community shall be gradual under procedures to be approved by the Superintendent of the New Hampshire Hospital"; (2) that defendant "shall continue in

regular psychotherapy with a psychiatrist approved by the Superintendent" so long as he considered it necessary; ( 3 ) that defendant return to the hospital for medical review or treatment when requested; ( 4 ) the defendant report regularly to the New Hampshire Probation Department which would make periodic reports as to his social conduct to the Superintendent of the hospital. It was also provided that any violation of the conditions shall constitute due cause for revocation of parole and return of the defendant to the hospital under the original commitment. The State's exceptions to the Court's findings, order and decree were reserved and transferred by *Morris*, J.

The State contends that it was error for the Court to parole the defendant under the provisions of RSA 135:29. That statute in pertinent part reads as follows: " The superior court . . . may . . . on due cause shown, parole any person committed to the hospital upon such terms and conditions as justice may require. " There is no indication that the statute was intended to be restricted in its scope or that it was not to be employed even though other means for release are applicable. RSA 607:3 ( supp ); Laws 1955, 177:1. *In re Wright's Petition*, ( Mass. ) 213 N. E. 2d 404; *Petition of Golden*, 341 Mass. 672. A restrictive reading of RSA 135:29 would be inconsistent with legislative intent and contrary to the statutory trends in this state and other jurisdictions which provide that commitments for mental illness may be tested or reviewed by any applicable procedure that is available. Lindman and McIntyre, The Mentally Disabled and the Law 124-133 ( 1961 ); Annot. 95 A.L.R. 2d 56; A.L.I. Model Penal Code, *s.* 4.08 ( Proposed Official Draft 1962 ). Accordingly the Trial Court properly proceeded under this statute.

" Assurance that the released patient will make a good adjustment and will be able to avoid further criminal behavior depends not only on hospital therapy and procedures for release, but also on treatment and supervision after release. We are only beginning to learn something of after-care needs and to develop new methods. " Weihofen, Institutional Treatment of Persons Acquitted by Reason of Insanity, 38 Texas L. Rev. 849, 867 ( 1960 ). This is what was attempted in this case and the Court's conditions of parole reflected the concensus of the testimony and reports of the psychiatrists in this proceeding. See Davidson, Forensic Psychiatry 238 ( 2d *ed.* 1965 ). It is true that there were differences and gradations in the expert testimony but there was

adequate support in the record for the order of parole that was made by the Trial Court.

Absolute certainty and complete unanimity in predicting the future behavior of any individual has not yet been attained and it is not to be expected in proceedings of this nature. The expert witnesses were dealing with an individual who was desirous of treatment and had benefited by it and who had been allowed the liberty of the hospital grounds for more than a year. There was general agreement among the experts "that under some procedure his release from the hospital should be arranged for his own welfare, and that safeguards should be devised to protect the public from any future relapse or the future development of anti-social behavior that might be symptomatic of such impending relapse." There was evidence to support the conclusion that the defendant "is not presently a danger to himself, and is not presently a danger to others." The terms and conditions of parole were designed to assure a continuance of this condition of the defendant and were valid. See *In re Moulton*, 96 N. H. 370, 373; *State* v. *Johnson*, 96 N. H. 4, 6; *Merrimack County* v. *Concord*, 39 N. H. 213, 216. A careful review of the reports, exhibits and testimony in this case shows that they warranted the order of the Court which allowed parole under restrictions and conditions designed to cure the defendant and protect the public.

The Court excluded evidence offered by the State to show the past practices of the hospital favoring methods of release other than the discharge of patients. While this evidence was relevant, its exclusion was not prejudicial in this case where discharge was denied and the Court's order provided that the defendant's return to the community "shall be gradual under procedures to be approved by the Superintendent of the New Hampshire Hospital."

*Exceptions overruled.*

All concurred.