Strafford
No. 7570

## The State of New Hampshire

### v.

### Peter Hesse

April 29, 1977

*David H. Souter,* attorney general, and *Richard B. McNamara* (*Mr. McNamara* orally), for the state.

*Leonard J. Merski* of Concord, and *James R. Anderson,* of Pittsfield (*Mr. Anderson* orally) for the defendant.

DOUGLAS, J. This is an appeal from the denial below of a petition to release and discharge defendant from involuntary psychiatric treatment in the New Hampshire Hospital. Defendant asserts he is no longer dangerous to himself or others. After a hearing the petition was denied by *Mullavey,* J., and defendant's exceptions were transferred. The issues to be determined are the burden of proof standards in release proceedings held pursuant to a petition by a defendant who has been found to be criminally insane and the extent to which an arrest record may be considered by a trial judge in "dangerous to be at large" proceedings.

In 1973, defendant entered a plea of not guilty by reason of insanity to a charge of aggravated assault. Defendant, with a gun, had assaulted a black man. Following psychiatric testimony, the defendant's plea was accepted and he was committed to the New Hampshire Hospital for life pursuant to RSA 651:9 (Supp. 1975). In 1975, defendant escaped. He was returned by extradition in April of 1976, having spent part of his unapproved absence residing in Colorado. Two months later he filed a petition for release, asserting that he was no longer in need of confinement and presented no danger to himself or the community.

At a hearing held in June of 1976, Dr. Ruick Rolland of the forensic unit testified that defendant Hesse had once had an "acute psychotic break" during which time he believed he was hearing voices from "black spirits." He was thereafter involved in a fight with three black men and received injuries requiring hospitalization. He then began to associate black men with "black spirits," and subsequently assaulted a black man under the belief that the

"spirits" told him to do so. The latter incident resulted in his confinement in 1973. Dr. Rolland also testified that defendant was diagnosed as having chronic paranoid schizophrenia, is on phenothiazine medication, is still "not fond of blacks," and is not dangerous as long as he remains medicated. Defendant, while not cured, is "treatable" through drugs.

Defendant then testified that while in Colorado he was involved in a "minor incident" with a black man, as a result of which he was picked up by the Denver police. The testimony which is objected to was offered when the state called Dover Police Captain Rowe to introduce a certified copy of the defendant's Denver arrest for aggravated assault.

■ The first issue deals with the allocation of the burden of proof when a defendant seeks release from a psychiatric hospital for the criminally insane in a proceeding other than one brought by the state under RSA 651:11-a (Supp. 1975). In a RSA 651:11-a (Supp. 1975) proceeding the state is the moving party and is therefore assigned the burden of proof, but at interim hearings held pursuant to a defendant's petition prior to the two-year renewal proceeding of section 11-a, the defendant is the party asserting the affirmative of the issue. See RSA 135:28 (Supp. 1975); RSA 135-B:41 (Supp. 1975). As in the case of a habeas corpus petitioner, the defendant (being the moving party herein) must bear the burden of proof. See Heath v. Vitek, 115 N.H. 200, 337 A.2d 345 (1975); State v. Piasecny, 108 N.H. 216, 231 A.2d 620 (1967); Chase v. Kearns, 278 A.2d 132 (Me. 1971); Developments in the Law-Civil Commitment of the Mentally Ill, 87 Harv. L. Rev. 1190, 1382 (1974). Accordingly, we find no constitutional impediment to placing the burden upon the defendant to prove by a preponderance of the evidence that he no longer presents a danger to society.

Defendant further asserts that on this record he should be released on an out-patient basis with medication rather than continue to be confined. He asserts that because Dr. Rolland and a psychiatric social worker both stated that defendant was no longer dangerous he must be released. The evidence showed that defendant is suffering from chronic schizophrenia and that medication is necessary to control his dangerous propensities, especially towards blacks.

One study relied upon by the Connecticut Supreme Court in State v. Warren, 169 Conn. 207, 363 A.2d 91, 94 (1975), showed

that fifty percent of the patients readmitted to Veterans Administration psychiatric hospitals were back because of "the failure of patients to realize the need to continue taking medication. . . ." A valid concern in such cases is the lack of assurance medicine will be maintained. In addition to the consideration that there can be no guarantee that the defendant would continue to take his medication if released, the trial judge could also have considered the fact that Dr. Rolland had little contact with his patient, basing most of his conclusions on the reports of the social worker. "Diagnoses based on such minimal observation are suspect" and there is "no general principle that the prosecution must counter defendant's expert medical evidence with expert testimony of its own." *United States v. Dube,* 520 F.2d 250, 251, 252 (1st Cir. 1975). Also, "[E]vidence bearing upon insanity has never been restricted to expert evidence. Conduct, lay observations and even lay opinions have traditionally been given much weight. 2 J. Wigmore, Evidence §§ 227 *et seq.* (3d ed. 1940)." *Dube,* 520 F.2d at 255 (Campbell, J., concurring).

The decision to release a committed defendant does not rest solely on a medical expert's opinion. Rather, as with civil commitments under RSA ch. 135-B (Supp. 1975), "it is clear that it is the judge . . . and not the medical experts who determines whether the patient's liberty is to be curtailed" even in the face of uncontradicted expert testimony. *Dolcino v. Clifford,* 114 N.H. 420, 421, 321 A.2d 577, 578 (1974); RSA 135-B:37 (Supp. 1975). "Absolute certainty" in predicting future behavior is not required or possible in such situations. *State v. Piasceny,* 108 N.H. 216, 218, 231 A.2d 620, 621 (1967). Even "reasonable accuracy" in dangerousness predictions has been ruled out by one professor of psychiatry. *Diamond, The Psychiatric Prediction of Dangerousness,* 123 U. Pa. L. Rev. 439, 440 (1974), and see in accord studies cited in Ennis, *Civil Liberties and Mental Illness,* 7 Crim. L. Bull. 101, 111–12 (1971). The trial judge "need not give unquestioning credence to any witness." It is the judge and not the psychiatrist to whom the legislature has entrusted the decision of when to release the criminally insane. *State v. Cook,* 66 Wis. 2d 25, 28, 32, 224 N.W.2d 194, 196, 198 (1974). While lesser included release powers or terms could have been utilized by the trial judge, we find no abuse of discretion on the facts before us. *United States v. Ecker,* 479 F.2d 1206 (D.C. Cir. 1973).

 Defendant's final argument is that the Denver arrest record charging the defendant with aggravated assault should not have been admitted, despite the fact that the trial judge made clear his understanding of the difference between an arrest and a conviction. The record was offered only after defendant had testified vaguely about an "incident" in Denver. No jury was involved, nor was the proceeding a criminal one. *Lake v. Cameron*, 364 F.2d 657, 661 (D.C. Cir. 1966).

The issue is the same as that dealt with in *United States v. Snyder*, 529 F.2d 871 (D.C. Cir. 1976), wherein certain information from police reports was admitted over the objection of a petitioning patient seeking release from a forensic unit. The court found that the information "fleshed out evidence" that was otherwise before it. *Snyder*, 529 F.2d at 877. That court held that the evidence, was admissible. Judge Robb stated:

> The hearing was before the judge without a jury, a circumstance that normally relaxes the strict rules of proof and allows the judge to evaluate evidence without straining it through a fine technical sieve. *Id.* at 877.

*Snyder* rejected the contention that a court could only consider a patient's criminal convictions in assessing his dangerousness, but recognized that any evidence of relevant conduct should be considered:

> In fulfilling his responsibility to guard against the discharge of a mentally ill patient who might be dangerous to others the [trial] judge would have been remiss had he closed his eyes to the detective's report of the investigation. *Id.* at 877.

No rational person could maintain that defendant's arrest for aggravated assault was not, given his admissions, pertinent to the inquiry at hand. It tended to show, as no other evidence could, that defendant was still compelled by his disease to assault black people, and accordingly, was still dangerous to be at large.

*Exceptions overruled.*

All concurred.