Allan A. KANTELES

v.

Major WHEELOCK, Superintendent, New Hampshire State Hospital, et al.

Civ. A. No. 77–174.

United States District Court,
D. New Hampshire.

Oct. 18, 1977.

James E. Duggan, Hillsborough County Public Defender, New Hampshire Legal Assistance, Manchester, N.H., for petitioner.

Robert V. Johnson, II, Asst. Atty. Gen., Concord, N.H., for the State of New Hampshire.

## OPINION AND ORDER

BOWNES, District Judge.

Petitioner was committed to the New Hampshire Hospital by order of the Hillsborough County Superior Court on May 23, 1977, pursuant to procedures authorized under NH RSA 651:8 and 9. He has come before this court seeking a writ of habeas corpus, 28 U.S.C. § 2254, claiming that the

procedures which resulted in his detention violate his rights to due process, equal protection of the laws, and to a jury trial as guaranteed by the Sixth and Fourteenth Amendments. The State, in response, has moved for a dismissal and/or for summary judgment on the grounds that the petitioner has failed to state a cause of action, that he has not exhausted his state remedies, and/or that the doctrine of abstention applies.

## THE FACTS

Petitioner Kanteles was indicted by the New Hampshire Hillsborough County Grand Jury in September, 1976, for aggravated felonious sexual assault, formerly "rape," NH RSA 632–A:2 (Supp.1975). The complainant was a woman with whom he had lived for over two years. He gave notice that he intended to raise the defense of consent. He never gave any indication of intent to rely on an insanity defense. Trial was set for May 23, 1977. On May 20, 1977, the State reconvened the grand jury and suggested that it omit to return an indictment because of petitioner's alleged insanity at the time the alleged assault was committed. This procedure is authorized by statute:

> NH RSA 651:8 *Certificate of Jury.* Whenever the grand jury shall omit to find an indictment against a person, for the reason of insanity or mental derangement, or a person prosecuted for an offense shall be acquitted by the petit jury for the same reason, such jury shall certify the same to the court.

The grand jury "omitted to find" the indictment and certified to the Superior Court judge its finding of Kanteles' alleged insanity or mental derangement.

There is no provision, nor any requirement, that the grand jury have before it any expert medical testimony relating to the accused's insanity. Nor is there any requirement or any provision for a period of observation of the accused, to assist the grand jury in its determination of his sanity.

On May 23, 1977, the Hillsborough County Court, sitting without a jury, conducted a hearing pursuant to NH RSA 651:9.

> NH RSA 651:9 *Committal.* In either of the cases aforesaid the court, if it is of opinion that it will be dangerous that such person should go at large, may commit him to the prison or to state hospital for life until or unless earlier discharged, released, or transferred by due course of law.

Petitioner was afforded the procedural safeguards required by statute at this committal hearing, i. e., notice, counsel and the right to present independent testimony.

> NH RSA 135:30–a (Supp.1975) *Conduct of Hearings for Commitment, Detention or Parole.* Whenever provisions of this chapter relative to the commitment, detention or parole of the mentally ill by criminal proceedings require that a hearing be conducted by the superior court then such hearing will be ordered in accordance with the following requirements:
>
> I. Such person shall have the right to be represented by counsel and shall have the right to present independent testimony. The court shall appoint counsel for such person whom it finds to be indigent and who is not represented by counsel, unless such person refuses the appointment of counsel.
>
> II. The court may provide an independent medical examination for such indigent person upon the request of his counsel or upon his own request if he is not represented by counsel.
>
> III. The person shall be allowed no less than two days after the appearance of his counsel in which to prepare his case and a hearing shall be conducted forthwith after such period unless counsel requests a delay.
>
> IV. Notice of the time and place of hearing shall be furnished by the court to the superintendent, the person, his counsel, and his nearest relative or guardian.
>
> V. The person or the superintendent may request either an open or a closed hearing and the court in its discretion may grant such a request.

The court considered only the question of petitioner's dangerousness. The State acknowledges the limited nature of the Superior Court inquiry in its brief to this court:

> The *only* issue which was before the Superior Court at the committal hearing was whether it would be dangerous for this Petitioner to go at large. Amended Memorandum at 6. [Emphasis added.]

The Superior Court, restricting itself solely to the question of dangerousness, found, beyond a reasonable doubt, that petitioner was dangerous to go at large. The court remanded Kanteles to the New Hampshire Hospital for life, unless earlier discharged.[1] On the same day, the State entered a *nolle prosequi* as to the original charge of aggravated felonious sexual assault and other unrelated charges.

### THE EXHAUSTION QUESTION

A person in custody seeking a writ of habeas corpus must, under 28 U.S.C. § 2254(b), exhaust remedies presently available to him in the state courts. *Fay v. Noia*, 372 U.S. 391, 435, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). A limited exception to the exhaustion requirement has been recognized when the question raised by petitioner has recently been decided by the state court. *Sarzen v. Gaughan*, 489 F.2d 1076, 1082 (1st Cir.1973); *Belbin v. Picard*, 454 F.2d 202, 204 (1st Cir.1972); *Walsh v. Picard*, 446 F.2d 1209, 1210 n.2 (1st Cir.1971), *cert. denied*, 407 U.S. 921, 92 S.Ct. 2465, 32 L.Ed.2d 807 (1972).

Petitioner was committed to the New Hampshire Hospital as the result of the interplay of two sections of a statute, NH RSA 651:8 and 9. Section 8 permits the grand jury to omit to find an indictment against a person because of insanity and to so certify to the trial court. The court, upon receipt of the certification as provided by section 8, can then commit the person to the state hospital, section 9, after a hearing held in accord with NH RSA 135:30–a (Supp.1975). In June, 1975, the New Hampshire Supreme Court held NH RSA 651:8 and 9 constitutional because of the due process requirements at the committal hearing. *State v. Novosel*, 115 N.H. 302, 339 A.2d 16 (1975).

The case which the New Hampshire Supreme Court decided in *Novosel* raised challenges to the statutory scheme of NH RSA 651:8 and 9 based on denial of equal protection and due process. The petitioner in *Novosel*, as petitioner Kanteles here, had been indicted by the grand jury and indicated his intention to rely on a defense other than insanity. One week before the trial was to begin, the State moved to reconvene the grand jury to suggest that it omit to return an indictment because of Novosel's alleged insanity. The grand jury found Novosel to be insane and so certified to the Superior Court. A hearing was conducted, pursuant to the due process requirements of NH RSA 135:30–a (Supp.1973), whereupon the court adjudged him to be dangerous and committed him to the New Hampshire Hospital for life unless earlier discharged.

The one point of departure between *Novosel* and petitioner here is that apparently Novosel's attorney attempted to suggest an insanity defense at one point. This was objected to by Novosel himself and thereupon withdrawn. Novosel's situation, therefore, paralleled petitioner Kanteles' at the point where the grand jury was reconvened to pass on his sanity: neither he nor his attorney was raising the defense of insanity; he was prepared to proceed to trial and litigate the issue of his purported crime; he intended to rely on a legally recognized defense, namely self-defense; he was never allowed to present his arguments to a jury.

Petitioner Kanteles filed his habeas petition on June 6, 1977, two years after the court ruled NH RSA 651:8 and 9 to be constitutional in *Novosel*. A two year interval has been found to fall within the "recently decided" exception, *Sarzen, supra*,

---

1. Persons civilly or criminally committed are now entitled to a determination every two years that they are still insane and thus subject to commitment. NH RSA 651:11–a (Supp. 1975).

at 1082; *Evans v. Cunningham*, 335 F.2d 491, 493 (4th Cir.1964).[2]

As the First Circuit noted:

When a state, or for that matter, federal court has spoken, stability and *stare decisis* require that litigants and other·courts take its pronouncement at face value until formally altered. Even in as rapidly changing a field as constitutional law, two years is too brief a period to presume change. A federal court cannot require a petitioner to go to another court merely because it speculates that new judicial personnel may be persuaded to reach different results. *Sarzen, supra*, at 1082.

■ I, therefore, find unpersuasive the State's suggestion that: (1) Kanteles cannot invoke the "recently decided" exception because two years is too long a period to qualify; and (2) Kanteles should be required to await further pronouncements from the New Hampshire Supreme Court regarding the nature of the committal hearing required under NH RSA 651:9. Amended Memorandum at 3.

I rule that *Novosel* does satisfy the "recently decided" exception rule and that petitioner need not await further pronouncements from the New Hampshire Supreme Court on the speculation that further refinement concerning NH RSA 651:8 and 9 will be forthcoming. *Sarzen, supra*, at 1082.

### THE ABSTENTION QUESTION

■ Because the challenged statute has been held to be constitutional by the New Hampshire Supreme Court, *State v. Novosel, supra*, the judicially created doctrine of abstention, *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), is inapposite. *Wisconsin v. Constantineau*, 400 U.S. 433, 438–39, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *Reetz v. Bozanich*, 397 U.S. 82, 86, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); *Harman v. Forssenius*, 380 U.S. 528, 534–36, 85 S.Ct. 1177, 14

L.Ed.2d 50 (1965). The doctrine of abstention was created so that a federal court could avoid the awkwardness resulting from a nonauthoritative ruling on a state law question or the prematurity of a determination of federal constitutional questions where the case might be decided on state law grounds. The present case involves no such difficulties. The New Hampshire Supreme Court has recently construed as constitutional the challenged statute within a context substantially identical to the case at hand. There is, therefore, no prematurity in this court's resolution of the constitutional question raised by petitioner. The Supreme Court has cautioned against a federal court's converting abstention "from an exception into a general rule." *Examining Board v. Flores de Otero*, 426 U.S. 572, 598, 96 S.Ct. 2264, 2279, 49 L.Ed.2d 65 (1975).

### THE DUE PROCESS QUESTION

The first determination which must be made is whether the Due Process Clause is implicated in the statutory scheme of NH RSA 651:8 and 9, and, if so, at what juncture it becomes operative.

Mr. Justice Frankfurter crystallized the imperative of due process; it is the demand for procedural fairness and is required whenever one may be "condemned to suffer grievous loss," *Joint Anti-Fascist Committee v. McGrath*, 341 U.S. 123, 168, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). The Due Process Clause has been found to apply in proceedings where property rights are affected, *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); where a person's good name, reputation or honor are affected, *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); where the continued liberty of a parolee is at issue, *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); where children are labelled "delinquent," *In re Gault*, 387 U.S. 1,

**2.** *See also Ralph v. Warden, Maryland Penitentiary*, 438 F.2d 786, 787–88 n.1 (4th Cir.1970), where the Court held a state court decision

four years earlier to satisfy the exhaustion requirement.

87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); at ·committal hearings following the expiration of prison terms, *Baxstrom v. Herold*, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966).

 Speaking in the context of the arguably more benign involuntary civil commitment procedures, Chief Justice Burger noted:

> There can be no doubt that involuntary commitment to a mental hospital, like involuntary confinement of an individual for any reason, is a deprivation of liberty which the State cannot accomplish without due process of law. *Specht v. Patterson*, 386 U.S. 605, 608 [87 S.Ct. 1209, 1211, 18 L.Ed.2d 326] (1967). *Cf. In re Gault*, 387 U.S. 1, 12–13 [87 S.Ct. 1428, 1435–1436, 18 L.Ed.2d 527] (1967). *O'Connor v. Donaldson*, 422 U.S. 563, 580, 95 S.Ct. 2486, 2496, 45 L.Ed.2d 396 (1975) (concurring).

Clearly, if due process requirements must be met for civil commitment, the demands for due process inherent in our criminal system can require no less.

The procedure outlined by NH RSA 651:8 and 9 clearly subjects one to the possible loss of freedom, as evidenced by this case. Following petitioner's certification as insane by the grand jury, there was a hearing and his subsequent committal to the New Hampshire Hospital. The key question is to ascertain at what point the Due Process Clause becomes involved. If it is only at the hearing during which the Superior Court Judge inquires as to his dangerousness, then petitioner has suffered no harm. It is undenied that at the committal hearing he was afforded the procedural safeguards of NH RSA 135:30–a. However, given the interlocked nature of NH RSA 651:8 and 9, they come too late. The critical question of· sanity has already been determined.

 It is the grand jury's determination of insanity certified to the Superior Court which is both the first step in the process which ultimately leads to committal and the last step at which any evidence on the underlying alleged incident is considered.[3] The certification of insanity to the Superior Court has the same effect upon the accused as a finding of not guilty by reason of insanity, in that it presupposes that he committed the crime charged. Once the grand jury finds him insane, the petitioner stands to suffer loss of liberty and the stigma of criminal commitment without being convicted of a crime. It is, therefore, at this stage where due process safeguards should attach.

A grand jury proceeding is not ordinarily an adversarial process. The grand jury is convened to determine whether there is probable cause to indict a citizen for the commission of a crime. Should the grand jury ·so find, the citizen will then be afforded the right to have the state produce sufficient evidence of the alleged crime to convince a jury beyond a reasonable doubt that, in fact, the crime was committed and that the person charged did so commit it. The accused's rights are protected in an adversarial trial on the merits. The grand jury's findings are there put to the crucible of proof beyond a reasonable doubt. They are not taken as conclusive.

Historically, the grand jury has played an important role protecting citizens from being called upon to answer for crimes unless there is probable cause to believe the citizen guilty of the crime charged. The function of the grand jury was early defined by Blackstone:

---

**3.** The only issue before the court at the committal hearing, under NH RSA 651:9, is whether the accused will be a danger if allowed to remain at large. The State acknowledges the nature of this restricted inquiry. Amended Memorandum at 6. *See, supra*, at 3. However, the State later claims that the holding of *State v. Hesse*, New Hampshire Supreme Court, 1977, 373 A.2d 345, requires the prosecution "to present evidence of the facts of the incident which gave rise to the committal hear-

ing." Amended Memorandum at 7. A reading of *State v. Hesse* reveals that the case deals only with evidence during release proceedings. I am here confronted with an insanity adjudication and committal proceeding, not with a release proceeding. The procedural safeguards are not equivalent in the two cases. A reading of NH RSA 651:9 likewise discloses that the issue before the Superior Court is the accused's dangerousness, not his purported insanity.

"[The grand jury] are only to hear evidence on behalf of the prosecution; for the finding of an indictment is only in the nature of an inquiry or accusation, which is afterwards to be tried and determined . . . ." *Beavers v. Henkel*, 194 U.S. 73, 84, 24 S.Ct. 605, 607, 48 L.Ed. 882 (1904).

The very difficulty with the present case is that the historic role of the grand jury has been converted from an accusatory and inquisitorial body into that of a fact finder. It has been transformed into a traverse jury. It is empowered, by virtue of NH RSA 651:8, to find an accused insane and so certify to the Superior Court Judge who treats the matter as conclusive, confining his inquiry to a determination of whether "it will be dangerous that such person should go at large." NH RSA 651:9.

The conclusive finding of fact is performed in a nonadversarial setting, in secret, with no cross-examination of witnesses, and no requirement of a written transcript from which an appeal may be taken. The accused may be compelled to appear before the grand jury and has no right to have his attorney present. The grand jury can consider hearsay evidence; it can consider evidence obtained as a result of illegal searches and seizures. The standard guiding the grand jury is that of "probable cause."

Under ordinary circumstances, this absence of procedural safeguards for the accused is justified because he will have his "day in court" during which he can challenge the sufficiency of the indictment and enjoy the protection afforded an accused in a criminal prosecution. When, however, the grand jury's findings are conclusive and need not run the gauntlet of a rigorous adversarial trial, that justification is lacking. When, as in the present case, these findings, conclusive in nature and yet untested in open court, set the stage for a subsequent proceeding at which the accused's liberty is at issue, the absence of procedural safeguards cannot be permitted. Within the context of NH RSA 651:8 and 9, the grand jury's finding and certification of insanity become a critical stage at which the accused is entitled to procedural safeguards.[4]

The constitutional frailty of this statutory scheme is evidenced by the record before this court. Petitioner was adjudged insane by the grand jury. He had given no indication of raising an insanity defense; there was no suggestion that he intended to rely on such defense at trial. There is nothing to suggest that the grand jury is competent to assume the role of forensic psychiatrist. NH RSA 651:8 and 9 permit a body totally lacking in expertise and operating in complete secrecy to declare insane a person charged with a crime. The statutory scheme does not require that a psychiatric examination of the accused precede the grand jury's finding. Despite the presence of NH RSA 135:17 (Supp.1975), which provides for commitment for psychiatric observation should the question of insanity be raised,[5] there was no such psychiatric obser-

---

4. A survey indicates that six other states have statutes which permit the grand jury to refuse to indict because of alleged insanity. They are: Alabama [Ala.Code tit. 15, § 429 (1958)], Mississippi [Miss.Code Ann. § 99–13–5 (1972)], North Carolina [N.C.Gen.Stat. § 122–84 (Supp. 1975)], Utah [Utah Code Ann. § 77–48–2 (Supp. 1977)], Vermont [Vt.Stat.Ann. tit. 13, §§ 4818, 4820 (1974)], West Virginia [W.Va.Code § 62–2–12 (1977)]. A seventh state, Massachusetts, had such a statute, but repealed it in 1970 [Mass.Ann.Laws, ch. 277 § 16 (1968) *repealed by* 1970 Mass.Acts 888 § 7 (1970); current provisions for criminal commitment are found at Mass.Ann.Laws, ch. 123 § 15 et seq. (1972)]. Only two of the statutes combine pretrial and posttrial commitment; four of the six require

an examination of the accused's sanity by the court. Mississippi requires that civil commitment proceedings be initiated. *See also* S. Brakel and R. Rock, *The Mentally Disabled and the Law* 397 (Rev.ed.1971).

5. The statute, in pertinent part, reads as follows:

135:17 *Commitment for Observation.* When a person is indicted for any offense . . . the superior court before which he is to be tried, if a plea of insanity is made in court, or said court is notified by either party that there is a question as to the sanity of the respondent, may make such order for a pretrial psychiatric examination of such person by a psychiatrist on the staff of any public institution or by a private psychiatrist . . .

vation of the petitioner. NH RSA 651:8 and 9 do not require it.

As a result of the grand jury finding and certification of insanity or mental derangement, the accused stands to suffer the loss of liberty and the stigma of criminal committal. Even if the Superior Court does not commit him, he has still been labelled insane. This is the type of interest which comes within the protective embrace of the Fourteenth Amendment. *Paul v. Davis*, 424 U.S. 693, 708–709, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Wisconsin v. Constantineau, supra*, 400 U.S. at 437, 91 S.Ct. 507; *In re Gault, supra*, 387 U.S. at 13, 87 S.Ct. 1428. By certifying him as insane, the accused's status under state law is significantly altered, since he is then subject to a committal hearing at which his liberty to remain at large is put at issue. That certification process must comply with elemental procedural safeguards. *In re Gault, supra.*

Further weakening this statutory scheme is its intermingling of pretrial and posttrial commitments. They clearly require different treatment, for reasons the Court was careful to point out in *Lynch v. Overholser*, 369 U.S. 705, 714, 82 S.Ct. 1063, 1069, 8 L.Ed.2d 211 (1962):

Of course the posttrial commitment . . . presupposes a determination that the accused has committed the criminal act with which he is charged, whereas pretrial commitment antedates any such finding of guilt.

Although, in fact, petitioner was never convicted of the crime charged, nor found innocent by virtue of insanity (which presumes, as the Supreme Court noted in *Lynch, supra*, that he committed the act charged), he was committed via the proceeding for criminal committal. He is thus branded as a criminal without having ever been convicted of a crime.

One of the most troubling aspects of the statute is that the prosecution is never put to the test of proving that the accused committed the alleged crime and, yet, the State presumes as true that which must still be proved. The State's brief to this court asserts "that *the Petitioner has committed acts which would constitute a crime* if he were sane . . . ." Amended Memorandum at 10. [Emphasis added.] It has not been proven beyond a reasonable doubt, *Speiser v. Randall*, 357 U.S. 513, 525–26, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958), that petitioner did, in fact, commit acts which would constitute a crime.

The provisions of NH RSA 651:8 and 9 resemble the procedures found wanting in *Gault, supra*. The Supreme Court there held that the method of determining "delinquency" lacked the fundaments of due process. Although the proceedings were labelled "civil," the court found that, in essence, they operated to deprive one of his liberty and were thus subject to the Due Process Clause. *Gault* involved

. . . proceedings by which a determination is made as to whether a juvenile is a "delinquent" as a result of alleged misconduct on his part, with the consequence that he may be committed to a state institution. *In re Gault, supra*, 387 U.S. at 13, 87 S.Ct. at 1436.

If the word "insane" or "mentally deranged" were inserted in the above quote, the instant case would be captioned. Both cases involve a finding in a nonadversarial setting of a person's status (delinquency in Gault's case, insanity in the instant case) which then leads, lock-step, to another proceeding where that person's liberty is in jeopardy.

I cannot close my eyes to the abuse of basic constitutional rights recourse to this statutory scheme makes possible. In this case, the Hillsborough County Prosecutor admitted to the court during the habeas hearing that the prosecutrix in the original

---

which order may include, though without limitation, examination at the New Hampshire Hospital on an out-patient basis, the utilization of local mental health clinics on an in- or out-patient basis, or the examination of

such person, should he be incarcerated for any reason, at his place of detention by psychiatrists assigned to a state or local mental health facility.

case had become reluctant to proceed to trial. He further admitted that the woman continued to see the petitioner, visiting him at the New Hampshire Hospital. Faced with the difficulty of proceeding to trial in a case where the prosecutrix might not testify, there is at least an implication that the State then decided to proceed against petitioner under NH RSA 651:8 and 9 so as to short-circuit his constitutional right to a full trial. He was whisked away into the twilight world of the insane and subjected to a committal hearing where the only issue was his dangerousness to be at large, protesting in vain that he did not commit the original crime with which he was charged. The lodging of such power with the grand jury presupposes its independence from the prosecutor, a status which has of late come under increasingly critical scrutiny. *See, e. g.*, "Grand Jury Reform Act of 1977," H.R. 94, 95th Cong., 1st Sess. (1977).

## EQUAL PROTECTION

The operation of NH RSA 651:8 and 9 subjects one to different standards and procedures from those civilly committed in three respects: the initial commitment, custodial treatment during committal, and release procedures.

### Initial Commitment

I need not reach the question of whether the appropriate test is the "rational basis" or the "compelling state interest" for adjudging whether the classification made by the New Hampshire State Legislature is permissible. The method for determining insanity under NH RSA 651:8 and 9 offends the Equal Protection Clause under either test.

NH RSA 135–B:28 (Supp.1975) outlines the requirements for involuntary civil commitment. A petition must be filed with the court, which includes the name of the person sought to be committed, the specific act or acts which suggest that the person poses a threat of danger to himself or others, the names and addresses of witnesses to the above-mentioned act(s).

The petition *shall* also include a certificate from a physician who has examined the person sought to be admitted, within five days of the date the petition is filed, who agrees that, based on this examination of the person sought to be admitted, such person satisfies the criterion of [potentially serious likelihood of danger to himself or to others]. [Emphasis added.] Upon receipt of the petition for involuntary civil commitment, the court "*shall* promptly order the person . . . to make himself available for an examination by a psychiatrist . . . ." NH RSA 135–B:32 (Supp. 1975). [Emphasis added.]

In contrast, there is no provision at all in NH RSA 651:8 or 9 which requires this type of information to be before either the grand jury determining petitioner's insanity or before the judge ordering committal. NH RSA 135:17 (Supp.1975) permits commitment for observation when a question of an accused's sanity is raised. The statute (which is set out in note 5, *supra*) provides that the Superior Court "*may* make such order for a pre-trial psychiatric examination of such person by a psychiatrist . . ." [Emphasis added.] Similarly, the requirements outlined in NH RSA 135:30-a (Supp. 1975) provide that the Superior Court "*may* provide an independent medical examination" [Emphasis added.] during the committal hearing. There is no *requirement* that there be any medical examination, independent or otherwise.

There is thus a distinction in the manner for determining whether one's dangerousness is such that his liberty should be curtailed by commitment in the New Hampshire Hospital. Involuntary civil commitment requires that there be a certificate from a psychiatrist attesting to the person's dangerousness. Committal under NH RSA 651:9 provides for no requirement at all of such a certificate. As discussed, *supra*, there is no requirement of any psychiatric examination of the accused prior to the grand jury's certifying him as insane. Even NH RSA 135:17 (Supp.1975) is an optional statute; there is no *requirement* that the court resort to it and, even should

the court use it, there is no requirement that a psychiatric examination occur. The United States Supreme Court has stated:

> Classification of mentally ill persons as either insane or dangerously insane of course may be a reasonable distinction for purposes of determining the type of custodial or medical care to be given, but it has no relevance whatever in the context of the opportunity to show whether a person is mentally ill *at all. Baxstrom v. Herold,* 383 U.S. 107, 111, 86 S.Ct. 760, 763, 15 L.Ed.2d 620 (1966). [Emphasis in original.]

 The New Hampshire statutory scheme which allows a distinction to be made in the method of determining whether one is insane or not, based merely on the fact of pending criminal charges, is an impermissible classification and denial of the equal protection of the laws. Speaking for the Court in *Jackson v. Indiana,* 406 U.S. 715, 729–30, 92 S.Ct. 1845, 1854, 32 L.Ed.2d 435 (1972), Mr. Justice Blackmun noted:

> [W]e cannot conclude that pending criminal charges provide a greater justification for different treatment than conviction and sentence. Consequently, we hold that by subjecting [one] to a more lenient commitment standard and to a more stringent standard of release than those generally applicable to all others not charged with offenses . . . [the State] deprived petitioner of equal protection of the laws under the Fourteenth Amendment.

I, therefore, find that NH RSA 651:8 and 9 offend the Equal Protection Clause because of the disparate standards for committal based on the pendency or not of criminal charges.

*Custodial Treatment During Committal*

I recognize that there may be a need to protect other patients and staff from a person who poses a threat to their safety and, therefore, recognize the legitimacy of different custodial treatment depending on a patient's dangerousness. I do not explore this question in depth in part because I find that the statutory scheme offends the equal protection guarantee on other grounds and, in part, because of the dictum in *Baxstrom v. Herold, supra,* 383 U.S. at 111, 86 S.Ct. 760, stating that different custodial or medical treatment may be permissible for persons classified as dangerously insane.

*Release Procedures*

The statutory release procedures under NH RSA 135–B:39 (Supp.1975) (discharge for those civilly committed) differ markedly from NH RSA 135–B:26 (discharge for criminally committed).

 In the former case, the administrator of the facility is able to order the release, notifying the court that the person has been discharged. Patients committed under NH RSA 651:9 who seek discharge[6] undergo a different procedure: the superintendent must give notice to the Superior Court and to the prosecutor's office thirty days prior to the proposed release date. Either the judge or the prosecutor can then request a judicial hearing on the question of release and the judge then makes the final determination. At the hearing, the burden is placed on the person committed to prove by a preponderance of the evidence that he no longer presents a danger to society. *State v. Hesse, supra,* at 346. In other words, the person will be forced to remain in the New Hampshire Hospital if it is *as probable as not* that he is no longer dangerous.[7] The question of whether petitioner

---

**6.** It should be made clear that this release procedure is that which applies whenever a patient at the New Hampshire Hospital, committed under NH RSA 651:9, actively seeks his own release; under NH RSA 651:11-a (Supp.1975), a review of all patients must be made every two years to determine whether they warrant continued commitment. If a patient feels he is no longer ill and does not want to languish two years awaiting the automatic review, he is,

therefore, subject to the strictures discussed above.

**7.** This is a situation which, in the context of a statute which placed the burden of proof on a defendant to prove that he acted in the heat of passion rather than with the malice required for first degree murder, the Supreme Court found to render "an intolerable result." *Mullaney v. Wilbur,* 421 U.S. 684, 703, 95 S.Ct. 1881,

remains dangerous should be judged by the same standard whether he was committed via civil or criminal proceedings. The different statutory treatment is a denial of the equal protection of the laws. *O'Connor v. Donaldson, supra*, 422 U.S. at 575, 95 S.Ct. 2486; *Baxstrom v. Herold, supra*, 383 U.S. at 111, 86 S.Ct. 760.

### RIGHT TO A JURY TRIAL

Petitioner has alleged denial of his Sixth Amendment right to a trial by jury. Because I have found that this statute offends the Due Process and Equal Protection Clauses of the Fourteenth Amendment, I need not decide this issue and do not.

Since the petitioner has been committed in violation of his constitutional rights, the State must either commence civil commitment proceedings against him forthwith or release him from the New Hampshire Hospital.

SO ORDERED.

44 L.Ed.2d 508 (1975). Where the petitioner rather than the state is called upon to prove the critical issue in dispute (dangerousness), there is an increased likelihood of an erroneous denial of his liberty. *Cf. Mullaney, supra*, at 701, 95 S.Ct. 1881. I believe this procedure violates due process within the holdings of *Mullaney, Speiser v. Randall*, 357 U.S. 513, 525–26, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958) (defendant's transcendent interest in his liberty compels burden of proof to be on state) and *Morrissey v. Brewer, supra*, 408 U.S. at 482, 92 S.Ct. 2593 (parolee's interest in continued liberty must be accorded due process protection). However, the holding in *Lavine v. Milne*, 424 U.S. 577, 585, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976), stating that allocation of the burden of persuasion in noncriminal proceedings does not raise a due process issue, has caused me to be reluctant to find it to violate due process. I have no difficulty, however, in holding that different release standards for those criminally committed and those civilly committed violate the Equal Protection Clause. *Jackson v. Indiana, supra*, 406 U.S. at 729–30, 92 S.Ct. 1845.