Original
No. 7467

FRANK D. GIBBS

v.

RAYMOND A. HELGEMOE, WARDEN

December 30, 1976

*Michael E. Chubrich,* of the New Hampshire Civil Liberties Union *(Mr. Chubrich* orally), for the plaintiff.

*David H. Souter,* attorney general, and *Richard B. McNamara,* attorney *(Mr. McNamara* orally), for the defendant.

LAMPRON, J.   Petition for a writ of habeas corpus (RSA ch. 534) or for the exercise of this court's power of general superintendence (RSA 490:4 (Supp. 1975)) pertaining to plaintiff's detention at the State prison as a criminally insane person. Plaintiff who was charged with armed robbery (RSA 585:18 (1955)) first pleaded not guilty. Thereafter, on November 26, 1973, plaintiff

changed his plea to not guilty by reason of insanity which was accepted by *King*, J. In accordance with a prior agreement, the State recommended that plaintiff be committed to the State hospital for life. However, the trial court heard testimony from a psychiatrist that the plaintiff's condition was diagnosed as a "chronic schizophrenic reaction" and that the State prison would be a more appropriate place for his confinement. The court committed plaintiff to the State prison "for life until or unless earlier discharged, released, or transferred by due course of law." RSA 651:9.

Plaintiff maintains that his constitutional rights of due process and of equal protection have been violated because his committal is for life while the involuntary commitment under civil procedures of a mentally ill person "shall [not] be valid for longer than two years." For the original civil commitment order to be renewed there must be another judicial hearing proving that this person's mental condition is still such that he is potentially dangerous to himself and to others. RSA 135-B:38 (Supp. 1975); *see Dolcino v. Clifford*, 114 N.H. 420, 321 A.2d 577 (1974). In contrast, the order committing the plaintiff for life sets out no procedure for his earlier discharge, release or transfer. A writ of habeas corpus can be resorted to but this places on the plaintiff the difficult burden of proving that his mental condition is such that he is no longer a danger to the public. RSA 534:1; *Heath v. Vitek*, 115 N.H. 200, 337 A.2d 345 (1975); *Waite v. Jacobs*, 475 F.2d 392, 399 (D.C. Cir. 1973); Comment, *Commitment Following Acquittal by Reason of Insanity and the Equal Protection of the Laws*, 116 U. Pa. L. Rev. 924, 938 (1968).

The legislature by Laws 1973, 556:1, now RSA ch. 135-B (Supp. 1975), enacted a detailed code of civil procedures relating to the admission and treatment of the mentally ill. It is important to bear in mind that the plaintiff was committed to the State prison not because of his mental condition at the time he is alleged to have committed an armed robbery but on his mental condition at the time of his sentence. He was committed because the trial court found that at that time his mental condition was such that "it would be dangerous that such person should go at large." RSA 651:9; *Bolton v. Harris*, 395 F.2d 642, 646 (D.C. Cir. 1968).

"Classification of mentally ill persons as either insane or dangerously insane of course may be a reasonable distinction for purposes of determining the type of custodial or medical care to be given, but it has no relevance whatever in the context of the

opportunity to show whether a person is mentally ill *at all.*" *Baxstrom v. Herold*, 383 U.S. 107, 111 (1966). Involvement in the criminal process is an inadequate reason "to justify less procedural and substantive protection against indefinite commitment than that generally available to all others." *Jackson v. Indiana*, 406 U.S. 715, 724 (1972); *Commonwealth v. Druken*, 356 Mass. 503, 507, 254 N.E.2d 779, 781 (1969); *Holderbaum v. Watkins*, 42 Ohio St. 2d 372, 375, 328 N.E.2d 814, 816 (1975) (Brown, J. concurring); Comment, *Commitment and Release Standards and Procedure: Uniform Treatment for the Mentally Ill*, 41 U. Chi. L. Rev. 825, 831-32 (1974).

About two years after its enactment of RSA ch. 135-B (Supp. 1975) setting up civil procedures for the admission and treatment of the mentally ill, the legislature directed its attention to both the commitment and the release of the criminally insane. Laws 1975, ch. 388, now part of RSA ch. 651 (Supp. 1975). It provided that when the forensic unit building and equipment at the State hospital are completed and in operation all criminally insane shall be committed to the State hospital (RSA 651:9-a (Supp. 1975)). At that time, RSA 651:9 (Supp. 1975) which presently permits committals to the State prison will be repealed. However, the legislature provided in the same Act that effective July 1, 1975: "Orders of committal or transfers to the state hospital made pursuant to this chapter shall be valid for two years. For the order to be renewed, another judicial hearing must be held". RSA 651:11-a (Supp. 1975). Section 11-b provides that, effective July 1, 1975, "Persons committed or transferred to the state hospital pursuant to this chapter shall be granted the rights set forth in RSA 135-B:42-46 [(Supp. 1975) (rights of civilly committed mentally ill)]."

These amendments must be interpreted in light of the previously mentioned due process and equal protection requirements applicable to the involuntary commitment and release of mentally ill persons in general. *Sibson v. State*, 110 N.H. 8, 11, 259 A.2d 397, 400 (1969). It is apparent that the legislature was responding to the developing awareness of the neglected and helpless state of civilly and criminally committed mental patients. RSA 651:11-a (Supp. 1975) imposes a two-year limitation on the commitment of all criminally insane now in the State hospital or to be committed in the future. The statute reveals no legislative intent to withhold these benefits to the nine criminally insane, including this plaintiff, who have been committed to the State prison instead of to the State hospital.

We hold that plaintiff's confinement order is subject to the provisions of RSA 651:11-a (Supp. 1975) requiring a judicial hearing for its renewal to be held within two years from the effective date of the statute, July 1, 1975, that is, on or before July 1, 1977. Otherwise the original order of commitment of November 26, 1975 shall then become null and void.

Essential elements in a commitment hearing are the nature of the burden of proof and on whom it is imposed. Neither RSA 135-B:26 (Supp. 1975) pertaining to hearings in civil commitments, nor RSA 135:30-a (Supp. 1975) providing for hearings by the superior court in criminal committals, address themselves specifically to these issues. See State v. Novosel, 115 N.H. 302, 303, 339 A.2d 16, 17 (1975). In view of our holding that plaintiff's committal order is subject to the two year limitation of RSA 651:11-a (Supp. 1975), we need not decide in this case whether the standards of proof which must prevail in the original criminal committal hearing can differ from those in a renewal hearing to continue the commitment of a criminally insane. See Waite v. Jacobs, 475 F.2d 392, 396 (D.C. Cir. 1973); United States v. Brown, 478 F.2d 606 (D.C. Cir. 1973).

It is clear that in involuntary confinement hearings, whether civil or criminal, the person involved is deprived of his liberty which constitutes a grievous loss. Morrissey v. Brewer, 408 U.S. 471, 481 (1972). The United States Supreme Court held in In re Winship, 397 U.S. 358 (1970), that the standard of proof beyond a reasonable doubt by the State is an essential requirement of due process in adjudicatory juvenile delinquency proceedings. Recently in Mullaney v. Wilbur, 421 U.S. 684 (1975), that same court held that placing on the defendant in a murder trial the burden of proving certain defenses was violative of due process because of the fundamental interest in liberty which is involved. See Specht v. Patterson, 386 U.S. 605, 609-10 (1967); Case comment, Unburdening the Criminal Defendant: Mullaney v. Wilbur and the Reasonable Doubt Standard, 11 Harv. C.R.-C.L. L. Rev. 390, 408-14, 424-25 (1976). Because of the often conflicting opinions of psychiatric experts, we are of the opinion that proof by the State beyond a reasonable doubt that plaintiff's mental condition still makes him a dangerous person to be at large is necessary to prevent an unwarranted renewal of a committal order. RSA 651:9 (Supp. 1975).

We therefore hold that in the hearing before the superior court to determine whether there should be a renewal of plaintiff's

order of commitment as criminally insane the State must prove beyond a reasonable doubt that his present mental condition is such that it would be dangerous for him to be at large. *See Developments in the Law – Civil Commitment of the Mentally Ill*, 87 Harv. L. Rev. 1190, 1297-303 (1974).

No commitment made under a similar order will be invalidated by this decision. However, all such orders shall be made to conform with the requirements of RSA 651:11-a (Supp. 1975) on or before July 1, 1977.

*Plaintiff discharged unless given a hearing before July 1, 1977.*

BOIS, J., did not sit; the others concurred.