Merrimack
Nos. 7925, 7926 and 7927

THE STATE OF NEW HAMPSHIRE

v.

GEORGE GREGOIRE

THE STATE OF NEW HAMPSHIRE

v.

RICHARD E. SHUTE, JR.

THE STATE OF NEW HAMPSHIRE

v.

VIKTOR NOVOSEL

March 10, 1978

*David H. Souter,* attorney general (*James L. Kruse* orally), for the State.

*James E. Duggan, Jeffrey A. Swillinger,* and *New Hampshire Legal Assistance* by *Bjorn Lange,* of Concord (*Mr. Duggan* orally), for the defendant George Gregoire.

*James R. Anderson,* of Pittsfield (*James E. Duggan,* of Concord, orally), for the defendant Richard E. Shute, Jr.

*Carroll F. Jones* and *James Burke,* of Concord (*Mr. Jones* orally), for the defendant Viktor Novosel.

BOIS, J. Three appeals challenging the preponderance of the evidence standard of proof in criminal recommitment hearings mandated by RSA 651:11-a (Supp. 1975), as amended by Laws 1977, 180:1.

On March 7, 1974, George Gregoire entered a plea of not guilty by reason of insanity to charges of lascivious acts, RSA 579:9 (repealed November 1, 1973), and statutory rape, RSA 585:16 (repealed November 1, 1973). After a hearing Gregoire was found to be a dangerous sexual offender and committed to the State hospital for life unless or until earlier discharged, released, or transferred by due course of law. RSA 651:9. A commitment renewal hearing was held on June 13, 1977, before a Justice of the Superior Court (*Cann,* J.), who imposed the preponderance of the evidence burden of proof on the State. The court found that Gregoire continued to suffer from a mental disease and that it would be dan-

gerous for him to go at large. The committal order was renewed.

Richard E. Shute, Jr., was committed to the State hospital on October 17, 1975, after a plea of not guilty by reason of insanity to a charge of aggravated felonious sexual assault. RSA 632-A:2 (Supp. 1975). Following a hearing held on June 21, 1977, a Justice of the Superior Court (*Cann, J.*) renewed Shute's commitment order, finding by a preponderance of the evidence that "the defendant suffers from a mental disease and that it would be dangerous for him to go at large."

■ Viktor Novosel was committed to the State hospital on June 12, 1975, pursuant to RSA 651:8, after a grand jury "omitted to indict" him by reason of insanity for second degree murder. RSA 651:8 in conjunction with RSA 651:9 allowed a person to be criminally committed if (1) a grand jury declined to indict him by reason of insanity and (2) a court then found that "it will be dangerous that such a person should go at large." RSA 651:8 has this day been ruled unconstitutional under N.H. Const. pt. 1, art. 15. *Novosel v. Helgemoe,* 118 N.H. 115, 384 A.2d 124 (1978). In light of the decision in *Novosel,* we hold that the instant appeal by Novosel from his recent recommitment is moot. *See Littlefield v. N.H. Interscholastic Athletic Ass'n,* 117 N.H. 183, 370 A.2d 645 (1977). Since defendants Gregoire and Shute are asserting objections to the recommittal procedures similar to those of Novosel, and their appeals are not moot, there is no need to apply the public interest exception to the mootness doctrine. *See Proctor v. Butler,* 117 N.H. 927, 380 A.2d 673 (1977).

The defendants' recommittal hearings were mandated by RSA 651:11-a (Supp. 1975), which in 1975 directed that: "Orders of committal or transfers to the State hospital made pursuant to this chapter shall be valid for two years. For the order to be renewed, another judicial hearing must be held." In *Gibbs v. Helgemoe,* 116 N.H. 825, 367 A.2d 1041 (1976), we held that in a criminal recommitment hearing the State must prove beyond a reasonable doubt that a patient's present mental condition is such that it would be dangerous for him to be at large. The General Court thereafter enacted Laws 1977, 180:1, which amended RSA 651:11-a (Supp. 1975) to provide that: "At the renewal hearing, when the court is satisfied *by a preponderance of the evidence* that the hospital patient suffers from mental disease and that it would be dangerous for him to go at large, the court shall renew the order of committal or transfer." (Emphasis added.) Defendants assert

that Laws 1977, 180:1, "seeks to limit an essential element of due process" and therefore violates our State constitution. We agree.

In the analogous area of involuntary civil commitment this court recently held that:

> The loss of liberty and stigmatization present in the involuntary commitment setting are fully comparable to the deprivations attending a criminal conviction. . . . The deprivation of liberty is obvious, and is not, as to the person mistakenly committed, ameliorated by the fact that "treatment" may be dispensed. . . . The reasonable doubt standard is compelled by N.H. Const. pt. I, art. 15 because of the grievous loss attendant upon an erroneous commitment decision. *Proctor v. Butler*, 117 N.H. 927, 380 A.2d 673, 676–77 (1977).

A person criminally committed is subject to the same grievous loss when the State attempts to recommit him—hence the adoption of the beyond a reasonable doubt standard by the *Gibbs* court.

We required the higher standard of proof in both *Gibbs v. Helgemoe* and *Proctor v. Butler* not only because of the vital interest in liberty, but also because of the established fact that psychiatric opinions are far from infallible. *See Novosel v. Helgemoe*, 118 N.H. 115, 384 A.2d 124 (1978); *Proctor v. Butler*, 117 N.H. 927, 380 A.2d 673 (1977); *Gibbs v. Helgemoe*, 116 N.H. 825, 367 A.2d 1041 (1976); Diamond, *The Psychiatric Prediction of Dangerousness*, 123 U. Pa. L. Rev. 439, 444 (1975); Robitsche and Williams, *Should Psychiatrists Get Out of the Courtroom?*, Psychology Today 85 (December 1977). The inquiry in a recommittal proceeding focuses on the need to continue confinement because of a patient's *present* mental condition; as the First Circuit stated in a related context:

> [T]he inherently speculative nature of psychiatric predictions, resulting in confinement not for what one has done but for what one will do, demands more than minimal procedures, particularly when such confinement is accomplished outside the traditional criminal process, with its right to jury trial and other ancient safeguards.

*Sarzen v. Gaughan*, 489 F.2d 1076, 1086 (1st. Cir. 1973).

Only by raising a high standard, *i.e.*, one that excludes confinement in cases of reasonable doubt, can the risk of erroneous recommit-

ment be reduced and the liberty guaranteed by N.H. Const. pt. I, art. 15, be protected and assured.

It is a basic postulate of our system of government that the General Court may not legislate away fundamental rights held to be secured by the State constitution. *Opinion of the Justices,* 116 N.H. 406, 413, 360 A.2d 116, 122 (1976); *Donnelly v. Manchester,* 111 N.H. 50, 51, 274 A.2d 789, 791 (1971); *Merrill v. Sherburne,* 1 N.H. 199, 215–16 (1818). *Gibbs* was decided on constitutional grounds. It may not be altered by statute. We therefore hold that insofar as Laws 1977, 180:1 permits recommittal if a mere preponderance of the evidence indicates that a person still suffers from mental disease and that it would be dangerous for him to be at large, it is unconstitutional.

*State v. Gregoire* and *State v. Shute* are remanded for proceedings consistent with this opinion.

*Exception sustained in part; remanded.*

LAMPRON, J., did not sit; the others concurred.