THE STATE OF NEW HAMPSHIRE

v.

RICHARD STEEVES

August 17, 1979

*Thomas D. Rath*, attorney general (*Richard B. McNamara*, assistant attorney general, orally), for the State.

*Beamis, Davis, Murray & Grossman P.A.*, of Somersworth (*Glen G. Davis* orally), for the defendant.

LAMPRON, C.J.  This is an action for modification of a recommitment order entered in compliance with *Gibbs v. Helgemoe*, 116 N.H. 825, 367 A.2d 1041 (1976). For the reasons elaborated upon below, we now consider this action to be moot.

In January 1967, the defendant, Richard Steeves, was found not guilty by reason of insanity of killing Ralph Mace. He also has pled not guilty by reason of insanity to murder charges in Ohio, and an indictment against him for killing a man is outstanding in Maine. In 1967, Steeves was committed to the New Hampshire State Prison for life or until or unless earlier discharged, released or transferred. RSA 651:9 (Supp. 1977). There he developed clockmaking skills and pursued this hobby actively.

In June 1977, a recommittal hearing was held in compliance with *Gibbs v. Helgemoe*, 116 N.H. 825, 367 A.2d 1041 (1976). Two psychiatrists testified that they diagnosed Steeves as suffering from paranoid schizophrenia when he committed his offenses. The trial court ordered the defendant recommitted to the State prison. In July 1977, after the defendant filed a motion for reconsideration, the Trial Court (*Loughlin*, J.) ordered him transferred to the New Hampshire Hospital, where he was placed in maximum security. The hospital staff arranged for him to pursue his clockmaking hobby in the maximum security unit.

In February 1978, the defendant filed a motion concerning the terms of commitment. He asserted that the present commitment terms made it impossible for the hospital to develop a treatment program which would allow him to demonstrate either his ability or inability to return to society. The defendant asked the court (1) to release the restrictions requiring him to be at all times in maximum security and (2) to "grant some leeway" to allow the hospital to develop a treatment program which would "protect society and allow the Defendant to demonstrate his ability to return to society at some future date." After a hearing, the superior court denied the defendant's motion. The defendant excepted to this order and filed a motion to set aside, again requesting that the court order the hospital to develop a treatment program which would enable the defendant to test his sanity. On May 17, 1978, the Trial Court (*Cann*, J.) denied this motion. All questions of law raised by the defendant's exceptions and motions were reserved and transferred.

Before this court, the defendant asserted first, that the State must develop a treatment program for him, and second, that such a program must be designed to test and improve the defendant's ability to return to society.

In June 1979, the parties offered a stipulation in superior court to the terms and conditions of the defendant's recommittal at the New Hampshire Hospital. The court entered a decree in accordance with the stipulation. First, the order that the defendant remain in maximum security was modified "to allow the staff of the Forensic Unit of the New Hampshire Hospital to assign Defendant's custody status in such a manner as, in the opinion of the staff, . . . is best directed to bringing about an improvement in Defendant's condition and is consistent with the safety of the community." Second, the defendant was "allowed only escorted on-grounds privileges, which privileges are to be afforded the Defendant in such a manner as the Staff . . . deems appropriate to bringing about an improvement in Defendant's condition and consistent with the safety of the community." Third, the hospital must notify the attorney general's office and the defendant's counsel immediately of any attempts or threats by the defendant to harm himself or others.

The court's decree provides the relief the defendant sought in the original motion concerning the terms of commitment. Specifically, the decree releases the restriction requiring the defendant to be in maximum security at all times, and the escorted ground privileges afford "some leeway . . . to allow the defendant to demonstrate his ability to return to society at some future date." The defendant now has the opportunity he sought to test his sanity.

The remaining relief the defendant seeks is the development of an individualized treatment program. The decree and stipulation also resolve this matter. "A stipulation embraces whatever its terms reasonably imply." *Kilroe v. Troast*, 117 N.H. 598, 601, 376 A.2d 131, 133 (1977); *Burbank v. Nordahl*, 199 Cal. App. 2d 311, 18 Cal. Rptr. 710 (1962). According to the decree, the hospital staff must grant escorted ground privileges and assign custody status in a manner best directed to improve the defendant's condition. This reasonably implies the development of a treatment program to effect these changes. *See Kilroe v. Troast*, 117 N.H. 598, 601, 376 A.2d 131, 133 (1977).

By freely entering into this stipulation, the defendant has manifested his acceptance of its terms. The decree provides substantially the same relief the defendant sought from this court: implementation of a treatment plan directed to improving his condition and an opportunity to demonstrate his sanity. In view of these factors, the defendant's action for modification of the recommitment order is moot, and a determination by this court is unnecessary and would serve no useful purpose. *Collins v. Hancock*, 354 F. Supp. 1253 (D.N.H. 1973); *Dolcino v. Thalasinos*, 114 N.H. 353, 321 A.2d 107 (1974); *see State v. City of Portsmouth*, 117 N.H. 936, 379 A.2d 1262 (1977).

*Case dismissed.*

DOUGLAS, J., did not sit; the others concurred.