Request of the Senate
No. 82-041

## OPINION OF THE JUSTICES

March 8, 1982

The following resolution, Senate Resolution No. 1, requesting an opinion of the justices was adopted by the Senate on January 20, 1982, and filed in the Supreme Court on January 26, 1982:

"Whereas, senate bill 8, an act relative to criminal commitments and involuntary civil commitments, is before the senate for consideration; and

Whereas, senate bill 8 provides that the standard of proof to be applied to criminal recommitment hearings shall be proof by clear and convincing evidence; and

Whereas, the senate has determined that the standard of proof by clear and convincing evidence at criminal recommitment hearing represents the best possible accommodation between the competing interests of the individual and of society; and

Whereas, the New Hampshire supreme court has previously determined that Part I, Article 15 of the New Hampshire Constitution requires that the standard of proof at criminal recommittal hearings must be proof beyond a reasonable doubt; *State v. Gregoire*, 118 N.H. 144 (1978); and

Whereas, the United States Supreme Court has recently determined that proof by clear and convincing evidence is a sufficient standard of proof at involuntary civil commitment hearings, and has reasoned that proof beyond a reasonable doubt may be an impossible burden in some such cases, *Addington v. Texas*, 441 U.S. 418 (1979); and

Whereas, a question has arisen as to the constitutionality of senate bill 8; now, therefore, be it

Resolved by the Senate:

That the Justices of the Supreme Court are respectfully requested to give their opinion and answer the following questions:

I. In view of the change in the standard of proof for criminal recommitment hearings proposed by senate bill 8 and in view of the recent pronouncement of the United States Supreme Court in *Addington v. Texas*, is a standard of proof by clear and convincing evidence at criminal recommitment hearings permissible under Part 1, Article 15 of the New Hampshire Constitution?

II. In all respects other than those to which the preceding question relates, is senate bill 8 constitutional on its face?"

The following reply was returned:

*To the Honorable Senate:*

The undersigned justices of the supreme court reply as follows to your request filed in this court on January 26, 1982:

In *Proctor v. Butler*, 117 N.H. 927, 380 A.2d 673 (1977), this court examined the standard of proof for involuntary civil commitments of persons to the New Hampshire Hospital, a delicate area of the law. We noted that the "loss of liberty and stigmatization present in the involuntary commitment settings are fully comparable to the deprivations attending a criminal conviction . . . . The deprivation of liberty is obvious, and is not, as to the person mistakenly committed, ameliorated by the fact that 'treatment' may be dispensed." *Id.* at 932–33, 380 A.2d at 676 (citations omitted). Because the consequences of erroneous confinement are so serious, this court adopted a "beyond a reasonable doubt" standard. We rejected the State's argument that the reasonable doubt standard was unreasonable, impractical, and impossible to meet. *See id.* at 933, 380 A.2d at 677. We noted that "[i]t is not difficult to conceive of circumstances in which evidence of past conduct and mental disability will convince 'beyond a reasonable doubt' of a potentially serious likelihood of dangerousness." *Id.* at 934, 380 A.2d at 677. We were determined to impose the standard assuring that errors would be made in favor of our citizens, not against them, in part because of the speculative nature of psychiatric diagnosis and prognosis and the conflicting opinions of psychiatric experts. *See id.* at 934, 380 A.2d at 677. The "moral force of the criminal law [must] not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned." *In re Winship*, 397 U.S. 358, 364 (1970).

In *State v. Gregoire*, 118 N.H. 140, 384 A.2d 132 (1978), we considered the burden of proof in criminal insanity recommitment proceedings brought under RSA 651:11-a (as amended by Laws 1977, 180:1). Previously, in *Gibbs v. Helgemoe*, 116 N.H. 825,

828–29, 367 A.2d 1041, 1043–44 (1976), we had held that a reasonable doubt standard of proof was constitutionally required in criminal recommitment hearings. The legislature's attempt to reduce this standard to "a preponderance of the evidence" was struck down as unconstitutional in *State v. Gregoire*, 118 N.H. 140, 144, 384 A.2d 132, 134 (1978). In that case, we upheld the rights of accused persons as set forth in part 1, article 15 of the New Hampshire Constitution and did not compromise the principles established in *Proctor v. Butler*, 117 N.H. 927, 380 A.2d 673 (1977) and *Gibbs v. Helgemoe*, 116 N.H. 825, 367 A.2d 1041 (1976). We make no retreat from these decisions despite the legislature's proposal to lower the standard of proof for criminal recommitment from the "beyond a reasonable doubt" standard to the "clear and convincing evidence" standard.

■■ As we said in *Gregoire:*

"We required the higher standard of proof in both *Gibbs v. Helgemoe* and *Proctor v. Butler* not only because of the vital interest in liberty, but also because of the established fact that psychiatric opinions are far from infallible. *See Novosel v. Helgemoe*, 118 N.H. 115, 384 A.2d 124 (1978); *Proctor v. Butler*, 117 N.H. 927, 380 A.2d 673 (1977); *Gibbs v. Helgemoe*, 116 N.H. 825, 367 A.2d 1041 (1976); Diamond, *The Psychiatric Prediction of Dangerousness*, 123 U. Pa. L. Rev. 439, 444 (1975); Robitsche and Williams, *Should Psychiatrists Get Out of the Courtroom?*, Psychology Today 85 (December 1977). . . . Only by raising a high standard, *i.e.*, one that excludes confinement in cases of reasonable doubt, can the risk of erroneous recommitment be reduced and the liberty guaranteed by N.H. CONST. pt. 1, art. 15, be protected and assured."

*Id.* at 143–44, 384 A.2d at 133–34.

■■ The burden of proof "beyond a reasonable doubt . . . is not insurmountable. It does not require that the court be satisfied beyond a reasonable doubt that the respondent will commit crimes of violence if he is not confined. The burden is satisfied if the court is convinced beyond a reasonable doubt that there is 'a potentially serious likelihood' that he will be a danger to himself or others." *State v. Hudson*, 119 N.H. 963, 967, 409 A.2d 1349, 1351 (1979) (citations omitted). *See State v. Hesse*, 117 N.H. 329, 373 A.2d 345 (1977). In the original commitment, specific acts indicating dangerousness "may be shown by evidence of the acts that gave rise to the

criminal charges. . . ." *Id.*, 409 A.2d at 1351. Recommittal orders "need *not* be based on specific acts, because commitment may be based on a *pattern* of prior action and testimony relating to the question whether or not any cure for defendant's condition has been effected." *Id.*, 409 A.2d at 1351–52 (emphasis added).

Last year, we considered the standard of proof applicable to involuntary civil commitment proceedings and again reaffirmed our support for the reasonable doubt standard. *See State v. Hudson*, 121 N.H. 6, 12, 425 A.2d 255, 258 (1981). We did so after carefully considering the most recent pronouncement of the United States Supreme Court on the subject of involuntary commitment in *Addington v. Texas*, 441 U.S. 418 (1979). In *Addington*, the Supreme Court ruled that fourteenth amendment due process did not require the states to adopt a reasonable doubt standard for civil commitments. *Id.* at 430–31. Under our federal system, however, the States are free to interpret their own constitutions and adopt stricter due process standards as long as they meet the federally prescribed minimum. *See State v. Phinney*, 117 N.H. 145, 146, 370 A.2d 1153, 1153 (1977); *Addington v. Texas*, 441 U.S. at 431. In New Hampshire, all citizens "have certain natural, essential, and inherent rights—among which are, the enjoying and defending life and liberty. . . ." N.H. CONST. pt. 1, art. 2. We have carefully considered the United States Supreme Court's ruling in *Addington* but are not persuaded that it adequately protects the liberty interests of our citizens. We note that our Bill of Rights, adopted in 1784, preceded the federal Bill of Rights by seven years. We respectfully answer the first question in the negative.

Section 2 of the bill would codify a change in the burden of proof of insanity.

For more than a century until 1978, the State had the difficult burden of proving that the defendant was sane. In the case of *Novosel v. Helgemoe*, 118 N.H. 115, 125–27, 384 A.2d 124, 131 (1978), we shifted that burden to the defendant. Thus, that portion of the bill placing the burden of proving the affirmative defense of insanity on the defendant is constitutionally sound. *See Patterson v. New York*, 432 U.S. 197, 210–11 (1977); *Novosel v. Helgemoe*, 118 N.H. 115, 126–27, 384 A.2d 124, 131 (1978).

With regard to the increase of the commitment period from two to five years, called for by section 3, we see no constitutional impediment. The confined individual may petition *prior* to the passage of the five-year period and obtain a hearing in superior court. If the committed individual can "prove by a preponder-

ance of the evidence that he no longer presents a danger to society," then he will be released. *State v. Hesse*, 117 N.H. 329, 331, 373 A.2d 345, 346 (1977).

We are reluctant to comment further on the bill before us due to a lack of opposing memoranda on other portions of the bill and the lack of adversaries in a specific case that would enable us to more specifically analyze its provisions.

> JOHN W. KING
> MAURICE P. BOIS
> CHARLES G. DOUGLAS, III
> DAVID A. BROCK
> WILLIAM F. BATCHELDER

March 8, 1982

Gregory H. Smith, attorney general, and Paul Barbadoro and Gregory W. Swope, attorneys, filed a memorandum supporting the constitutionality of senate bill 8 in all respects.