Grafton
No. 83-408

THE STATE OF NEW HAMPSHIRE

v.

HARLAN ROBB

October 5, 1984

*Gregory H. Smith,* attorney general (*John A. Malmberg,* assistant attorney general, and *Edna M. Conway,* attorney, on the brief, and *Mr. Malmberg* orally), for the State.

*Schapira & Green P.A.,* of Manchester (*Cathy J. Green* on the brief, and *Andru H. Volinsky* orally), for the defendant.

BROCK, J.  On December 21, 1973, the defendant, Harlan Robb, entered a plea of not guilty by reason of insanity to a charge of murder, in connection with the killing of his mother on September 21, 1972. The superior court accepted the plea, and the defendant was subsequently committed to the New Hampshire Hospital "for life until or unless earlier discharged, released, or transferred by due course of law." RSA 651:9 (Supp. 1983).

Under the law then in effect, the defendant was not guaranteed the right to periodic review of his commitment. Later changes in statutory and case law, however, gave him that right, *see Gibbs v. Helgemoe*, 116 N.H. 825, 367 A.2d 1041 (1976), and he was recommitted in 1977, 1979, and 1981.

Until 1982, orders of committal to the New Hampshire Hospital, for patients like the defendant, were valid for only two years. Renewal of the order depended on a court finding "that the hospital patient suffers from mental disease and that it would be dangerous for him to go at large . . . ." Laws 1977, 180:1. In *State v. Gregoire*, 118 N.H. 140, 144, 384 A.2d 132, 134 (1978), we held that part I, article 15 of our State Constitution required that such a finding be supported by proof beyond a reasonable doubt.

In 1982, the legislature amended the recommittal statute. Laws 1982, 34:2. It now reads, in pertinent part, as follows:

"I.  Orders of committal to the New Hampshire hospital made pursuant to this chapter shall be valid for 5 years. For the order to be renewed, another judicial hearing must be held. At the renewal hearing, when the court is satisfied by proof beyond a reasonable doubt that the hospital patient suffers from a mental disorder and that it would be dangerous for him to go at large, the court shall renew the order of committal.

II. Without otherwise limiting the discretion of the court, a court shall find it would be dangerous for a person to go at large if:

(a)  He has been found not guilty by reason of insanity of a crime; and

(b)  The physical act or acts constituting the crime of which the person was found not guilty by reason of insanity caused death or serious bodily injury as defined in RSA 625:11, VI, to him or another, or created a grave risk of death or serious bodily injury to him or another; and

(c)  The person suffers from the mental disorder or a substantially similar mental condition as existed at the time he committed the act or acts which constituted the

crime of which he was found not guilty by reason of insanity."

RSA 651:11-a, I and II (Supp. 1983).

When the Senate requested this court's opinion as to the constitutionality of an early version of the 1982 amendment, we reaffirmed the necessity of the "beyond a reasonable doubt" standard of proof. *Opinion of the Justices*, 122 N.H. 199, 204, 442 A.2d 594, 595–96 (1982). We declined, however, to comment on other aspects of the bill including section II, "due to a lack of opposing memoranda . . . and the lack of adversaries in a specific case that would enable us to more specifically analyze [the bill's] provisions." *Id.* at 205, 442 A.2d at 597. The case now before us is such a case.

In 1983 the State petitioned for the defendant's recommittal under the amended statute, and a hearing was held on June 10 of that year. Testimony at the hearing revealed considerable disagreement among medical experts regarding the defendant's condition. Even at the time of his original commitment in 1973, the defendant had been variously diagnosed as suffering either from "a latent schizophrenic illness," or from organic brain damage secondary to childhood meningitis.

At the 1983 hearing, both of these diagnoses were questioned by a psychiatrist who had examined the defendant twice. He testified that, in his opinion, the defendant "has an unspecified non-psychotic disorder if any." He noted that the defendant "has always had . . . a certain remoteness or detachment, a matter-of-factness that is difficult to define," and concluded: "[I]f any disorder or any mental condition existed at the time of his previous dangerous act I don't believe we have made a substantial impact on that condition." He considered the defendant's dangerousness to be "unpredictable."

The record indicates that the defendant was married in 1981, and that since 1982 he has been allowed extensive off-grounds privileges. He works full time and, since shortly before the 1983 hearing, has spent six nights of every week with his wife and her children. The hospital psychologist responsible for his case testified that the hospital is simply monitoring the defendant; he receives no therapy or medication.

The Superior Court (*Temple*, J.) found "beyond a reasonable doubt that the same basis of concluding that mental illness was present in 1973 [is] present today and that his dangerousness is unpredictable. Specifically the Court finds it would be dangerous for the defendant to go at large only by applying RSA 651:11-a, II to this matter." The court accordingly ordered the defendant recommitted subject to the continuation of his parole plan.

In response to the defendant's motion for clarification, the court subsequently ruled that the recommittal order was valid for only two years, thus impliedly holding that the five-year provision in section I of the amended statute was an unconstitutional ex post facto law.

The defendant then brought this appeal, arguing that section II of the statute is also invalid, both as an ex post facto law and as an infringement on his rights to due process of law and equal protection of the laws. N.H. CONST. pt. I, art's 1, 2, 15 and 23. Because we hold that section II violates the defendant's right to due process of law, as guaranteed by part I, article 15 of the New Hampshire Constitution, we need not address his other arguments.

■ In a series of cases, this court has established the minimum due process requirements for both civil and criminal recommittals. *Gibbs v. Helgemoe*, 116 N.H. at 828–29, 367 A.2d at 1043–44; *Proctor v. Butler*, 117 N.H. 927, 935, 380 A.2d 673, 677 (1977); *State v. Gregoire*, 118 N.H. at 144, 384 A.2d at 134; *Opinion of the Justices*, 122 N.H. at 203–04, 442 A.2d at 596; *State v. Paradis*, 123 N.H. 68, 72, 455 A.2d 1070, 1073 (1983). The finder of fact must be convinced beyond a reasonable doubt that the patient "is in such mental condition as a result of mental illness as to create a potentially serious likelihood of danger to himself or to others." RSA 135-B:26. *See State v. Paradis*, 123 N.H. at 70, 455 A.2d at 1072 (equating the test in RSA 135-B:26 with that in RSA 651:11-a, I (Supp. 1983)).

■ In arriving at this standard, we emphasized two factors: the "grievous loss attendant upon an erroneous commitment decision," *Proctor v. Butler*, 117 N.H. at 934, 380 A.2d at 677, and "the established fact that psychiatric opinions are far from infallible," *State v. Gregoire*, 118 N.H. at 143, 384 A.2d at 133 (citing Diamond, *The Psychiatric Prediction of Dangerousness*, 123 U. PA. L. REV. 439, 444 (1975); Robitsche and Williams, *Should Psychiatrists Get Out of the Courtroom?*, PSYCHOLOGY TODAY 85 (December 1977)). These factors, particularly the latter, have led us to hold further "that the determination of mental disease and dangerousness are matters for the trial court to decide and that the opinions of experts are not necessarily dispositive." *State v. Paradis*, 123 N.H. at 71, 455 A.2d at 1072; *see also Humphrey v. Cady*, 405 U.S. 504, 509 (1972) (stressing "the critical function of introducing into the [commitment] process a lay judgment, reflecting values generally held in the community, concerning the kinds of potential harm that justify the State in confining a person for compulsory treatment").

RSA 651:11-a, II (Supp. 1983) attempts to subvert this rule by creating an irrebuttable presumption of dangerousness, based on

the defendant's past dangerous act, and on the fact that the mental condition which led to his acquittal by reason of insanity has not substantially changed.

In arguing for the validity of this presumption, the State relies on the distinction this court has drawn between the type of evidence required for an initial commitment and that required for recommittal. Initial commitment "requires evidence of sufficiently recent 'specific acts or actions' showing potential dangerousness," *Proctor v. Butler*, 117 N.H. at 935, 380 A.2d at 678 (quoting RSA 135-B:28), which in the criminal context will normally involve evidence of the acts constituting the crime charged. *Opinion of the Justices*, 122 N.H. at 203–04, 442 A.2d at 596 (citing *State v. Hudson*, 119 N.H. 963, 967, 409 A.2d 1349, 1351 (1979)).

On the other hand, "[r]ecommittal orders 'need *not* be based on specific acts, because commitment may be based on a *pattern* of prior action and testimony relating to the question whether or not any cure for defendant's condition has been effected.'" *Opinion of the Justices*, 122 N.H. at 204, 442 A.2d at 596 (emphasis in original) (quoting *State v. Hudson*, 119 N.H. at 967, 409 A.2d at 1351–52).

It is clear, however, that the latter holding involves a permissive inference ("commitment *may* be based"), a device which "leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof . . . . A mandatory presumption is a far more troublesome evidentiary device." *Ulster County Court v. Allen*, 442 U.S. 140, 157 (1979). While a mandatory presumption need not "be accurate in every imaginable case," *id*. at 155–56 n.14, in a criminal context "the analysis of the presumption's constitutional validity is . . . based on the presumption's accuracy in the run of cases," *id*. at 159.

The presumption at issue here will accordingly be valid only if the legislature could reasonably determine that, in the run of cases, evidence of the sort described in RSA 651:11-a, II (Supp. 1983) would constitute proof of dangerousness beyond a reasonable doubt, notwithstanding any evidence to the contrary—evidence concerning, for example, the nature of the mental illness involved, the circumstances surrounding the original dangerous act, the length of time since the initial commitment, and the defendant's record of behavior since that time. We can find no reasonable basis for such a determination, either in scholarly commentary or in the legislative history.

As one commentator has pointed out, "[t]he psychiatric concepts of mental illness comprehend a vast array of aberrations, from total

dysfunction and divorce from reality to annoying or disturbing eccentricities." Note, *Standards of Mental Illness in the Insanity Defense and Police Power Commitments: A Proposal for a Uniform Standard,* 60 MINN. L. REV. 1289, 1295 (1976). This fact, together with the demonstrated fallibility of psychiatric judgments mentioned above, has led the same commentator to the view that any "determination of dangerousness [should be] separate from and precedent to the determination of mental illness and based solely on past conduct." *Id.* at 1289–90 n.2. Others have noted that, for the mentally ill as for everyone else, "behavior is always in response to, and in the context of, certain very specific stimuli." A. WATSON, PSYCHIATRY FOR LAWYERS 301 (1968). Thus, "crimes may be the product of stresses that are unlikely to recur." Note, *Commitment of Persons Acquitted by Reason of Insanity: The Example of the District of Columbia,* 74 COLUM. L. REV. 733, 747 n.93 (1974). The statute under review here makes no allowance for such considerations.

Some courts have found a constitutional requirement that the State introduce evidence of some recent overt conduct of the defendant before dangerousness can be found; others have refused to establish such a rule. *See Project Release v. Prevost,* 722 F.2d 960, 973 (2nd Cir. 1983) (overt act not required), and cases cited therein; *see also Powell v. State of Florida,* 579 F.2d 324, 333 n.10 (5th Cir. 1978) ("While an initial commitment of an acquittee may well focus upon the crime committed, the release of an individual committed by reason of insanity more properly looks to that individual's behavior since the crime to determine whether or not his recent behavior demonstrates his continuing dangerousness.").

We believe that a "recent overt act" requirement would place an unnecessarily heavy burden on the State. We reaffirm our holding in *Opinion of the Justices,* 122 N.H. at 203–04, 442 A.2d at 596, that a court *may* infer potential dangerousness from evidence of a patient's past dangerous acts, combined with a showing that his mental condition has not substantially changed. Due process requires, however, that the patient be given a chance to defeat that inference with additional evidence. By denying him that chance, RSA 651:11-a, II (Supp. 1983) "subverts the acquittee's right to confront the state on the issue of dangerousness . . . [, and] invites serious questions about punitive intent on the part of the legislature." Note, *Rules for an Exceptional Class: The Commitment and Release of Persons Acquitted of Violent Offenses by Reason of Insanity,* 57 N.Y.U. L. REV. 281, 320–21 (1982).

At a public hearing prior to the enactment of section II, a representative of the New Hampshire Division of Mental Health, testifying in support of the measure, stated:

"There is no way to predict dangerousness. The present law includes within it the fallacy that we can do that with our psychiatric knowledge. In fact, the only indication we really have that a person is likely to commit another dangerous act is that that person committed one in the past. So what this bill does is it takes what we actually do but makes it more clear. It gives us the guidance and takes the court out of the quandry [sic] of trying to apply something that can't be measured. They look at the fact that the person committed an act which was dangerous and they look at the fact that the person has substantially the same mental condition as when that act was committed. From that it is *fairly safe* to assume that this person poses the risk of committing it again, or as safe as any other measure we have. So it does take a step forward in giving more guidance to those who have to make what otherwise would be an impossible decision."

1982 Senate Judiciary Committee Minutes, SB 8, January 15, 1982, testimony of M. Epstein, at 4 (emphasis added).

A "fairly safe" assumption of potential dangerousness is not proof beyond a reasonable doubt. This statute is, rather, an attempt to substitute the combination of past dangerousness and a medical diagnosis of mental illness for a judicial finding of present dangerousness, without sufficient evidence of a direct correlation between the two. *See* Ennis and Litwack, *Psychiatry and the Presumption of Expertise: Flipping Coins in the Courtroom*, 62 CAL. L. REV. 693, 733–35 (1974).

"Dangerousness is, as we have said before, a legal concept and not a medical one, . . . and no precise measuring device can be applied in making the determination. It is for the trial court to weigh *all* the evidence and to decide whether in *its* judgment the release of the defendant into society would create such a risk that it would be a dangerous thing to do."

*State v. Paradis*, 123 N.H. at 71, 455 A.2d at 1073 (emphasis added) (citation omitted).

We accordingly hold that RSA 651:11-a, II (Supp. 1983) is invalid, in that it denies insanity acquittees their right to due process guaranteed by part I, article 15 of the State Constitution. The judgment of the superior court is vacated and the case is remanded for a new hearing.

Because the insanity plea in this case was accepted in 1973, before

the effective date of Laws 1975, 388:4 (codified at RSA 651:11-a), this case is distinguishable from *State v. Ballou*, 125 N.H. 304, 481 A.2d 260 (1984). A majority of the court held in *Ballou* that the application of RSA 651:11-a, I (Supp. 1983) to the defendant in that case was invalid as a retrospective law, because the provisions of that statute were more onerous after 1982 than they had been on October 22, 1980, the date of the defendant's insanity plea. *Id.* at 310–13, 481 A.2d at 263–65.

The new provisions, however, are not more onerous than those in effect on December 21, 1973, when the defendant in this case pleaded not guilty by reason of insanity. As the defendant concedes, the only aspect of the new law that is more onerous than the pre-1975 law is the provision that we have held invalid in this case. On remand, the trial court's application of section I should accordingly be reconsidered in the light of our holding today.

*Reversed and remanded.*

SOUTER, J., did not sit; the others concurred.